STATE OF NORTH CAROLINA v. COLEMAN COVINGTON, JAMES
    McEACHIN, DAVID WAYNE NICHOLSON AND LEROY RICH-
    ARDSON

No. 9

(Filed 14 July 1976)

1. **Criminal Law § 66— in-court identification — view of defendant in
   prior court proceedings**
       The viewing of a defendant in the courtroom during the various
   stages of a criminal proceeding by witnesses who are offered to tes-
   tify as to identification of the defendant is not, of itself, such a
   confrontation as will taint an in-court identification unless other
   circumstances are shown which are so "unnecessarily suggestive and
   conducive to irreparable mistaken identification" as would deprive
   defendant of his due process rights.

2. **Criminal Law § 66— in-court identification — failure to make findings
   of fact**
       The trial judge did not commit prejudicial error in failing to
   make findings of fact when he denied defendants' motion to suppress
   the in-court identification testimony of three State's witnesses after a
   *voir dire* hearing where there was no conflicting evidence on the *voir
   dire* hearing, defendants merely elicited on cross-examination the
   fact that the State's witnesses had observed defendants in courtroom
   proceedings on one or more occasions subsequent to the crime, there
   is nothing in the record to show any improper pretrial confrontation
   and the record discloses clear and convincing evidence that the iden-
   tification testimony was of independent origin based on the witnesses'
   observations of defendants at the time of the crime.

3. **Criminal Law § 73— statements by victim — competency as part of
   res gestae**
       In a prosecution for murder committed in the perpetration of
   armed robbery, testimony that at the time or just before one defend-
   ant stabbed the witness and fatally wounded the victim, the victim
   stated, "Please don't kill her. She's give you all of her money," was
   properly admitted as part of the *res gestae.*

4. **Conspiracy § 5; Criminal Law § 79— conspiracy — declarations of co-
   conspirators**
       When the State shows a *prima facie* conspiracy, the declarations
   of the coconspirators in furtherance of the common plan are competent
   against each of them even where defendants are not formally charged
   with a criminal conspiracy.

5. **Conspiracy § 5; Criminal Law §§ 73, 79— statement by defendant —
   admissibility against coconspirators — res gestae**
       Where the State's evidence showed that defendants were carrying
   out a plan or an agreement to commit an armed robbery when the
   deceased was killed, a statement made by one defendant just before
   he stabbed deceased, "That white sonofabitch ought to have been

dead," was admissible against the other defendants as a statement made in furtherance of the conspiracy; furthermore, such statement was also admissible as part of the *res gestae*.

**6. Homicide § 25— felony-murder — instructions on proximate cause of death**

In a prosecution for murder committed in the perpetration of a robbery, the trial court did not err in failing to instruct the jury that in order to find defendant guilty it must find that the robbery was the proximate cause of the victim's death, the court having correctly instructed the jury that the State must prove beyond a reasonable doubt that defendant stabbed the victim while committing the crime of robbery and that the stabbing of the victim proximately caused his death.

**7. Homicide § 21— murder in perpetration of robbery — sufficiency of evidence of defendant's guilt**

The State's evidence was sufficient for the jury on the issue of defendant's guilt of first degree murder where it tended to show that the victim was killed while defendant and his three codefendants were engaged in the perpetration of an armed robbery and that defendant not only was taking part in the armed robbery but that he also physically participated in the killing of the victim.

**8. Criminal Law § 102— jury argument**

Counsel must be allowed wide latitude in the argument of hotly contested cases and may argue to the jury the facts in evidence and all reasonable inferences to be drawn therefrom together with the relevant law so as to present his side of the case; whether counsel abuses this privilege is a matter ordinarily left to the sound discretion of the trial judge, and an appellate court will not review the exercise of such discretion unless there be such gross impropriety in the argument as would be likely to influence the verdict of the jury.

**9. Criminal Law § 102— jury argument — expression of own knowledge and beliefs**

Counsel may not employ his argument as a device to place before the jury incompetent and prejudicial matter by expressing his own knowledge, beliefs and opinions not supported by the evidence.

**10. Criminal Law § 102— jury argument — duty of court to censor**

It is the duty of the trial judge, upon objection, to censor remarks not warranted by the evidence or the law and, in cases of gross impropriety, the court may properly intervene *ex mero motu*.

**11. Criminal Law § 102— jury argument — statement that deceased had been "living, breathing human being" — rights of victims**

In a first degree murder prosecution the district attorney's argument that deceased had been "a living, breathing human being, just like you and just like me, and he is gone forever now" was within the bounds of the record evidence, and there was no gross impropriety in the district attorney's statement that "everybody is concerned about the rights of the defendants . . . When in God's name are we going to start getting concerned about the rights of the victims?"

State v. Covington

12. **Criminal Law § 102— jury argument — duty of counsel to "sway your mind from justice" — curative instruction**

While the district attorney's argument that defense counsel "are supposed to do everything they can to sway your mind from justice in this case and get their clients off if they can" was improper, the trial judge's prompt action in instructing the jury to disregard this argument removed any possibility of prejudice.

13. **Homicide § 15— health of decedent — testimony by decedent's wife**

In a prosecution for first degree murder committed in the perpetration of a robbery, testimony by decedent's wife that he was in good health when he left home on the date of the crime was competent to show that defendant died from wounds he received on the day of the robbery, and medical testimony subsequently offered by the State did not render such testimony incompetent.

14. **Criminal Law § 114— corroborative evidence — instructions — consistency of statements and testimony — no expression of opinion**

The trial court did not express an opinion in violation of G.S. 1-180 when he stated in his instructions that statements made by two witnesses to a deputy sheriff were consistent with the testimony given by the witnesses in the courtroom where the court's further instructions made it clear that it was for the jury alone to determine whether the deputy sheriff's testimony was consistent with the courtroom testimony of the two witnesses.

15. **Criminal Law § 116— instructions on failure of defendant to testify**

The trial court's instructions on the failure of defendant to testify complied with the requirements of G.S. 8-54 and exceeded the minimal requirements approved in prior decisions.

16. **Criminal Law § 46— search for defendant — defendant's actions when located — evidence of flight**

In a prosecution for first degree murder, testimony by an SBI agent relating to his unsuccessful search for defendant which continued for three days after the commission of the crime and his description of defendant's furtive acts when he was finally located were properly admitted into evidence.

17. **Criminal Law § 87— manner of examination of witness — no abuse of discretion by court**

No abuse of the court's discretion was shown in the manner in which the district attorney was permitted to examine an SBI agent.

18. **Criminal Law § 33— observation of defendant in certain car before crime — relevancy**

In a prosecution for murder committed in the perpetration of a robbery wherein an automobile observed at the crime scene and in which defendants fled was identified as a blue and white Plymouth Duster, a witness's testimony that he saw two of the defendants a short time before the crime in a blue and white Plymouth Duster which belonged to one defendant's sister was relevant to show that one defendant had access to a blue and white Plymouth Duster and

to strengthen eyewitness testimony that such defendant was the man who remained with the automobile and furnished the "get away" car.

**19. Criminal Law § 87— ownership of vehicle — foundation for testimony**

Testimony that the witness lived in the small town of Laurinburg and had known defendant for twenty years gave a reasonable foundation for and credence to the witness's testimony that a car in which he saw the defendant riding was owned by defendant's sister.

**20. Criminal Law § 113— failure to define "corroboration"**

The trial court did not err in failing to define "corroboration" and "corroborative evidence" absent a request for such an instruction.

**21. Criminal Law § 89— noncorroborative evidence — error cured by instruction**

In a prosecution for murder committed in the perpetration of a robbery, error in the admission for corroborative purposes of an officer's testimony that a witness told him that a person standing at the raised hood of a car at the crime scene "looked real funny at him when he drove up" when the witness did not so testify was cured by the trial court's instruction that the jury should not consider that portion of the officer's testimony.

**22. Criminal Law § 96— withdrawal of evidence**

Ordinarily, when incompetent evidence is withdrawn from the jury's consideration by appropriate instructions from the trial judge, any error in admission of the evidence is cured.

**23. Criminal Law § 89— noncorroborative evidence — error cured when objection sustained**

Any error in the admission of an officer's testimony that a witness told him a car at the crime scene was a Plymouth or Dodge with a N. C. license plate and that the witness saw four subjects leave the scene, when the witness testified only that the car was blue and white and did not testify as to the number of persons he saw leave the scene, was cured when the trial court sustained defendant's objections to the noncorroborative testimony.

**24. Criminal Law § 169— admission of evidence over objection — similar evidence admitted without objection**

The admission of incompetent testimony is cured when substantially the same evidence is theretofore or thereafter admitted without objection.

**25. Homicide § 21— robbery-murder — aider and abettor — sufficiency of evidence**

In a prosecution for murder committed in the perpetration of an armed robbery, the State's evidence was sufficient for the jury to find that defendant acted as lookout and driver of the "get away" car, and that he was thus guilty of first degree murder as an aider and abettor, where it tended to show: defendant was seen driving his sister's blue and white Plymouth Duster automobile with a codefendant as a passenger shortly before the crime was committed; a blue

State v. Covington

and white Plymouth Duster was parked in front of the store where the crime occurred during the time of the crime and defendant was standing beside the car; the hood of the car was up and defendant stuck his head under the hood when the store owner appeared; a codefendant was seen entering the Duster and none of the defendants were observed at the crime scene after the Duster departed; the store owner fired toward and struck the Duster at least one time; witnesses observed a blue and white Duster traveling toward Laurinburg shortly after the crime; the car was occupied by three or four colored people and one occupant had a bloody rag beside his head; a blue and white Duster with blood on the front passenger headrest and with the right front window broken out was found parked one-quarter mile from defendant's home; defendant's fingerprints were on the hood of the car; and all defendants had lived in Laurinburg for at least fifteen years.

26. **Homicide § 2— conspiracy to rob — murder during robbery — responsibility of conspirator**

Where an accused entered into a conspiracy to commit an armed robbery, he is criminally responsible for a murder committed by another conspirator during the robbery even though he did not actually participate in that attempt.

27. **Criminal Law § 87; Indictment and Warrant § 13— motion for bill of particulars — testimony of proposed witnesses**

The trial court did not err in the denial of the portion of defendant's motion for a bill of particulars seeking a detailed statement of the testimony of each witness to be offered by the State, the court having ordered the State to furnish defendant a list of the proposed witnesses for the State and a copy of all statements made by defendant and his codefendants to police officers concerning the alleged crime.

28. **Criminal Law § 92— consolidation of charges against four defendants**

The trial court properly consolidated for trial charges against four defendants for murder committed in the perpetration of an armed robbery. Former G.S. 15-152.

29. **Jury § 2— motion for special venire**

The trial court in a murder case did not err in the denial of defendant's motion for a special venire on the ground that deceased was well known and highly regarded in his township.

30. **Constitutional Law § 31; Criminal Law § 97— reading of witness's testimony to jury by court reporter**

The trial court did not err in allowing the court reporter, at the request of the jury, to read back the testimony of two witnesses.

31. **Criminal Law § 117— instructions on corroborative evidence**

Trial court's instructions on corroborative evidence were in accord with prior Supreme Court decisions.

32. **Criminal Law §§ 9, 113— instructions on aiding and abetting — criminal purpose**

In a prosecution for murder committed in the perpetration of armed robbery, the trial court's instructions made it clear that in order to con-

State v. Covington

vict defendant as an aider and abettor, the State had to prove beyond a reasonable doubt that he shared with his codefendants the criminal purpose to commit the crime of armed robbery.

**33. Homicide § 30— felony-murder — failure to submit lesser offenses**

The trial court in a first degree murder case was not required to submit lesser included offenses to the jury where all of the evidence tended to show that the murder was perpetrated during the course of an armed robbery.

**34. Criminal Law § 114— instructions on taking of verdicts — no expression of opinion**

The trial judge did not express an opinion as to defendant's guilt when he instructed in the presence of the jury that the clerk would first take the verdict as to a codefendant and "following that and any motions his attorney might like to make" the clerk would take the verdict as to defendant, although the better practice is for the court to instruct the clerk in the absence of the jury as to the procedure for taking the verdict.

**35. Constitutional Law § 36; Criminal Law § 135; Homicide § 31— death sentences unconstitutional — imposition of sentences of life imprisonment**

Since the U. S. Supreme Court has invalidated the death penalty provisions of G.S. 14-17 (Cum. Sup. 1975), the statute under which each defendant was indicted, convicted and sentenced to death for first degree murder, the sentences of death are vacated and sentences of life imprisonment are substituted therefor by authority of the provisions of 1973 Sess. Laws, c. 1201, § 7 (1974 Session).

**36. Constitutional Law § 29; Jury § 7— exclusion of jurors because of capital punishment views — death sentences vacated**

Defendants' constitutional rights were not violated by the exclusion of jurors because of their views concerning capital punishment in a trial of defendants for first degree murder where sentences of death imposed on defendants have been invalidated and sentences of life imprisonment have been substituted therefor, since the decision of *Witherspoon v. Illinois*, 391 U.S. 510, invalidated only the sentence of death and not the conviction of a defendant.

APPEAL by defendants from *Smith, J.*, at 5 May 1975 Criminal Session, ROBESON Superior Court. Each defendant gave notice of appeal but the appeals were not perfected because the State failed to serve its countercases. We allowed petitions for writs of certiorari as to each defendant on 8 January 1976 to the end that their respective appeals might be perfected.

Defendants were charged in separate bills of indictment with murder in the first degree. The cases were consolidated for trial over the objection of each defendant.

State v. Covington

The State offered evidence which tended to show that on the morning of 13 December 1974 Coreene Jacobs was in the store operated by Mrs. Jacobs and her husband, Wade Jacobs. During the morning, Eula Hunt arrived to clean the store and the Jacobs' dwelling which adjoined and was to the rear of the store. At about 11:30 a.m., Mrs. Jacobs, Eula Hunt and Joseph Maxwell Cook were sitting in the store talking. At that time three black men came into the store. One of the men, later identified as Leroy Richardson, asked for a package of Winston cigarettes and Mrs. Jacobs started behind the counter to obtain the cigarettes. Just as she reached the counter, Richardson grabbed her and said, "I want all of your money and your life." One of the men, later identified as James McEachin, pointed a knife toward Eula Hunt. He tied her up and made her lie on the floor. The third man, later identified as Coleman Covington, pointed a sawed-off shotgun in Mr. Cook's face. Richardson forced Mrs. Jacobs to open the cash register, threw her to the floor and stood upon her body while he removed the money from the cash register. After finding some money concealed beneath a round of cheese, he took a butcher knife used to cut cheese and stabbed Mrs. Jacobs in the neck. Mr. Cook said, "Please don't kill her. She's give you all of her money." Then Richardson, still armed with the butcher knife and with the aid of Covington dragged Mr. Cook from the chair in which he was sitting. When Mrs. Jacobs begged them not to kill Mr. Cook, Richardson replied, "The white sonofabitch ought to have been dead." Covington and Richardson then stood Mr. Cook up and Richardson stabbed him in the back with the butcher knife. Mr. Cook fell and Covington hit him on the head with an unidentified object. He then hit Mrs. Jacobs on the head causing her to lose consciousness.

Wade Jacobs returned to the store with a load of sand at about 11:20 a.m. and at that time observed a man, later identified as David Wayne Nicholson, standing by a blue and white automobile. The hood of the car was up and Nicholson stuck his head under the hood when Mr. Jacobs stopped. Mr. Jacobs entered the store when he saw a hand motion from inside the building. When he entered the store, he was struck from behind and upon turning, he saw Richardson run toward him with the butcher knife in his hand. Mr. Jacobs met Richardson and caught his arm. Covington joined the affray, using the sawed-off shotgun as a club. McEachin cut Mr. Jacobs several times with a pocketknife. The men forced Mr. Jacobs across

the body of his wife into the living quarters where he tripped over a chair. As he fell, he kicked Covington down and also delivered a blow to Richardson. Then "someone hollered run." The three black men ran out through the store and Mr. Jacobs obtained his shotgun and then ran to the front of the store where he saw Richardson enter the blue and white car on the passenger side. He fired three shots toward the car and saw glass fall from the car. The blue and white automobile knocked down the mailbox and then proceeded down Highway 501 toward Laurinburg. Hubert Faircloth observed the blue and white automobile while it was parked in front of the store and identified it as a "Duster." On the same day, a blue and white "Duster" automobile was found in Laurinburg. It was established that this automobile belonged to defendant Nicholson's sister. The window on the right side was shattered and there was blood on the headrest on the passenger side. Fingerprints lifted from the hood of this automobile were positively identified as being fingerprints of defendant David Wayne Nicholson. Mr. Cook's wallet, Mrs. Jacobs' wallet, a sawed-off shotgun and a knife were subsequently found along Highway 501 between Jacobs' store and Laurinburg.

Dr. Bob Andrews, a pathologist who performed an autopsy on the body of Joseph Maxwell Cook, testified:

> My initial investigation of the body revealed a wound in the back of the right side of about an inch and a half long; it was located an inch and a half to the right of the midline, about twelve inches below the shoulder line on the right back. I probed that wound, and it went through the chest wall in the back just below the twelfth rib, through the lower lobe of the right lung, cut a portion of the diaphram (sic) on the right; went through the sac that covers the heart, and nicked the lower edge of the heart. . . .

He testified that, in his opinion, Mr. Cook died as a result of hemorrhage caused by this wound.

Officers who saw Covington upon his arrest on 15 December 1974, testified that he had scars on the right side of his face and head. He gave one of the officers a pellet which he said he had picked out of his leg.

Defendants offered no evidence and the jury returned verdicts of guilty as charged. Each defendant gave notice of appeal from judgment imposing the death penalty.

*Attorney General Rufus L. Edmisten, by Special Deputy Attorney General Edwin M. Speas, Jr. and Associate Attorney Elizabeth R. Cochrane, for the State.*

*Carl A. Barrington, Jr., attorney for appellant Covington.*

*H. E. Stacy, Jr., attorney for appellant McEachin.*

*Joseph C. Ward, Jr. and Arthur L. Lane, attorneys for appellant Nicholson.*

*John C. B. Regan, III, attorney for appellant Richardson.*

BRANCH, Justice.

### APPEAL OF DEFENDANT COVINGTON

Defendant Covington assigns as error the failure of the trial judge to find facts when he denied defendant's motion to suppress the in-court identification testimony of the State's witnesses, Coreene Jacobs, Wade Jacobs and Eula Hunt.

When defendants moved to suppress the in-court identification testimony of Coreene Jacobs, Wade Jacobs and Eula Hunt, the trial judge correctly conducted a *voir dire* hearing in the absence of the jury to determine its admissibility.

On *voir dire,* Mrs. Jacobs identified defendants McEachin, Covington and Richardson as the men who entered the Jacobs' store on 13 December 1974 and there killed Joseph Maxwell Cook. She testified that she was in the presence of these men for a period of fifteen to twenty minutes. Mrs. Jacobs admitted that she subsequently saw defendants at a pretrial hearing. Defense counsel inquired if she could better describe Richardson from her observations in court or from the twenty minutes that she saw him in the store on 13 December 1974. She replied, "I'd know him anywhere." Mrs. Jacobs stated that she saw defendant Covington when he walked in the door and for a period of about two minutes when she was lying on the floor. She saw McEachin for only a brief moment when he came in the door. On cross-examination, Mrs. Jacobs was unable to describe the clothes or the particular features of the defendants as they appeared on 13 December 1974.

Eula Hunt testified that she saw the three defendants enter the Jacobs' store on 13 December 1974. She identified McEachin as the one who tied her up, Richardson as the one who grabbed

and stabbed Mrs. Jacobs, and Covington as the man she saw hold a gun on Mr. Cook. She described several articles of clothing worn by Covington, McEachin and Richardson respectively.

Mr. Jacobs identified all four defendants as the men he observed at his store on 13 December 1974 and he stated that his identification was based on his observations of these men on that day. He admitted having seen all of them in a courtroom subsequent to 13 December 1974. The State also offered the testimony of Hubert Faircloth who identified the defendants Richardson and McEachin as two men he saw at the Jacobs' store on 13 December 1974.

Each of the State's witnesses examined on *voir dire* testified that he or she had not been shown any pictures for identification purposes and that he or she had not observed any of the defendants in a "lineup."

Defendants offered no evidence on *voir dire*. At the conclusion of the *voir dire* hearing Judge Smith, without making any findings of fact or entering any conclusions of law, ruled "that identification as to each of the defendants is admissible."

In support of their position as to this assignment of error, defendants rely on the rules stated in *State v. Tuggle*, 284 N.C. 515, 201 S.E. 2d 884. There we stated:

> When the admissibility of in-court identification testimony is challenged on the ground it is tainted by out-of-court identification(s) made under constitutionally impermissible circumstances, the trial judge must make findings as to the background facts to determine whether the proffered testimony meets the tests of admissibility. When the facts so found are supported by competent evidence, they are conclusive on appellate courts. *State v. McVay* and *State v. Simmons*, 277 N.C. 410, 417, 177 S.E. 2d 874, 878 (1970); *State v. McVay* and *State v. Simmons*, 279 N.C. 428, 432, 183 S.E. 2d 652, 655 (1971); *State v. Morris*, 279 N.C. 477, 481, 183 S.E. 2d 634, 637 (1971).

See *Simmons v. United States*, 390 U.S. 377, 19 L.Ed. 2d 1247, 88 S.Ct. 967.

In *State v. Lynch*, 279 N.C. 1, 181 S.E. 2d 561, the prosecution, on *voir dire*, offered evidence tending to show that a con-

fession was voluntarily made. Defendant offered no evidence in contradiction. The trial judge, without finding any facts, admitted the challenged confession into evidence. Holding the admission of the confession to be without prejudicial error, Justice Sharp, now Chief Justice, speaking for the Court, stated:

> . . . If, on *voir dire*, there is conflicting testimony bearing on the admissibility of a confession, it is error for the judge to admit it upon a mere statement of his conclusion that the confessison was freely and voluntarily made. In such a situation the judge must make specific findings so that the appellate court can determine whether the facts found will support his conclusions. *State v. Moore*, 274 N.C. 141, 166 S.E. 2d 53; *State v. Barber*, 268 N.C. 509, 151 S.E. 2d 51; *State v. Conyers*, 267 N.C. 618, 148 S.E. 2d 569; *State v. Barnes*, 264 N.C. 517, 142 S.E. 2d 344. When, as in this case, no conflicting testimony is offered on *voir dire*, it is not error for the judge to admit the confession without making specific findings. *State v. Bishop*, 272 N.C. 283, 158 S.E. 2d 511; *State v. Keith*, 266 N.C. 263, 145 S.E. 2d 841. Clearly, however, it is always the better practice for the court to find the facts upon which it concludes any confession is admissible.

Accord: *State v. Bishop*, 272 N.C. 283, 158 S.E. 2d 511; *State v. Keith*, 266 N.C. 263, 145 S.E. 2d 841. Defendant challenged the in-court identification testimony on the grounds that it was tainted by an unfairly conducted lineup in *State v. Williams*, 274 N.C. 328, 163 S.E. 2d 353. We rejected his contention that this was prejudicial error and Justice Lake, speaking for the Court, stated:

> If there were any conflicts in the evidence or any suggestion whatever in the entire record that the lineup was unfairly conducted or that the defendant did not waive his right to counsel thereat, as the State's evidence clearly shows he did, we would reverse the conviction and grant a new trial because of the failure of the trial judge to find the crucial facts. Where, however, as here, there is no conflict in the evidence, it is abundantly clear that the defendant did waive his right to counsel at the lineup, it is equally clear that the lineup was conducted fairly and without prejudice to him, and perfectly obvious that the in-court identification was not fruit of the lineup but had its in-

dependent origin in the witness' observation of the crime itself, this failure of the trial court to insert such findings into the record must be deemed harmless error. . . .

*State v. Stepney,* 280 N.C. 306, 185 S.E. 2d 844, is a case in which identification testimony was challenged on the ground that the in-court identification was tainted by an out-of-court pretrial identification. The court, without conducting a *voir dire,* admitted the identification testimony into evidence. Finding no prejudicial error in the admission of this testimony, we stated:

> It is apparent from the foregoing decisions that the better procedure dictates that the trial judge, even upon a general objection only, should conduct a voir dire in the absence of the jury, find facts, and thereupon determine the admissibility of in-court identification testimony. *State v. Blackwell, supra* (276 N.C. 714, 174 S.E. 2d 534). Failure to conduct the voir dire, however, does not necessarily render such evidence incompetent. Where, as here, the pretrial viewing of photographs was free of impermissible suggestiveness, and the evidence is clear and convincing that defendant's in-court identification originated with observation of defendant at the time of the robbery and not with the photographs, the failure of the trial court to conduct a voir dire and make findings of fact, as he should have done, must be deemed harmless error. *State v. Williams, supra* (274 N.C. 328, 163 S.E. 2d 353). A different result could not reasonably be expected upon a retrial if all evidence of pretrial photographic identification were excluded.

In instant case, there was no evidence of a pretrial lineup or a pretrial identification by use of photographs. Defendants did, however, elicit by cross-examination the fact that the State's witnesses observed the defendant in courtroom proceedings on one or more occasions subsequent to 13 December 1974.

[1] We have held that the viewing of a defendant in the courtroom during the various stages of a criminal proceeding by witnesses who are offered to testify as to identification of the defendant is not, of itself, such a confrontation as will taint an in-court identification unless other circumstances are shown which are so "unnecessarily suggestive and conducive to irreparable mistaken identification" as would deprive defendant of his due process rights. See *State v. Bass,* 280 N.C. 435, 186 S.E. 2d 384; *State v. Haskins,* 278 N.C. 52, 178 S.E. 2d 610.

[2] This record discloses that there was no conflicting evidence on the *voir dire* hearing. There was nothing in the record to show any improper pretrial confrontation. The record does disclose clear and convincing evidence that the identification testimony by the State's witnesses was of independent origin based on the witness's observation of defendants on 13 December 1974. Under these circumstances, the trial judge's failure to find and insert factual findings into the record does not constitute prejudicial error. However, we again note that when there is objection to or a motion to suppress testimony of identification, the better practice is for the trial judge to find and insert facts into the record to support his ruling.

[3] Defendant, without citation of authority, next contends that the trial judge erred in failing to suppress Mrs. Jacobs' testimony that the deceased, Joseph Maxwell Cook, stated, "Please don't kill her. She's give you all of her money." This statement was made by Mr. Cook at the time or just before Richardson stuck a knife in Mrs. Jacobs' throat and immediately before he fatally wounded Mr. Cook.

This exclamation by Mr. Cook was a spontaneous utterance made without time for fabrication or reflection. The rule governing the admission of such statements is concisely stated in 1 Stanbury's N. C. Evidence § 164, at 554 (Brandis Rev. 1973):

> "When a startling or unusual incident occurs, the exclamations of a participant or a bystander concerning the incident, made spontaneously, and without time for reflection or fabrication are admissible into evidence."

Clearly Mr. Cook's utterance was correctly admitted as part of the *res gestae. State v. Burleson,* 280 N.C. 112, 184 S.E. 2d 869; *State v. Goines,* 273 N.C. 509, 160 S.E. 2d 469.

The next assignment of error challenges the ruling of the trial judge which admitted, over objection, a statement made by defendant Richardson. Just before he stabbed Mr. Cook, defendant Richardson said: "The white sonofabitch ought to have been dead." In the alternative defendant Covington argues that if the statement was admissible, the trial judge should have instructed the jury that the statement should not bear on his innocence or guilt.

[4, 5] When the State shows a *prima facie* conspiracy, the declarations of the coconspirators in furtherance of the common

plan are competent against each of them. *State v. Crump,* 280 N.C. 491, 186 S.E. 2d 369; *State v. Hairston,* 280 N.C. 220, 185 S.E. 2d 633. This is so even where the defendants are not formally charged with a criminal conspiracy. *State v. Absher,* 230 N.C. 598, 54 S.E. 2d 922. A criminal conspiracy is the unlawful conference of two or more persons in a scheme or agreement to do an unlawful act or to do a lawful act in an unlawful way. *State v. Guthrie,* 265 N.C. 659, 144 S.E. 2d 891; *State v. Parker,* 234 N.C. 236, 66 S.E. 2d 907. The State's evidence showed that these defendants were carrying out a plan or an agreement to commit an armed robbery when Mr. Cook was killed. This evidence established a *prima facie* conspiracy, and, therefore, Richardson's statement was admissible. Further, this statement which was made just before defendant Richardson inflicted the fatal blow to Mr. Cook was also admissible as a part of the *res gestae. State v. Burleson, supra; State v. Goines, supra; State v. Feaganes,* 272 N.C. 246, 158 S.E. 2d 89.

Defendant's assignment of error number 26 is deemed abandoned since he brings forward no argument or citation of authority. Rule 28, Rules of Practice in the Supreme Court.

[6] Defendant Covington contends that the trial judge erred in his instructions to the jury on the felony-murder doctrine. He argues that the trial judge should have instructed the jury that "the death of Mr. Cook must be found . . . to have arisen so as to be a direct or proximate cause of the felony allegedly perpetrated." Failure to give such an instruction, defendant contends, allowed the jury to return a verdict of guilty of murder in the first degree even though he may have withdrawn from the commission of the felony, or the felony may have occurred prior to the homicide.

We disagree. G.S. 14-17 provides in part:

A murder . . . which shall be committed in the perpetration or attempt to perpetrate any . . . robbery . . . shall be deemed murder in the first degree and shall be punished with death. . . .

In *State v. Thompson,* 280 N.C. 202, 185 S.E. 2d 666, Chief Justice Bobbitt, writing for the Court, elaborated upon the requirements of the felony-murder doctrine codified as G.S. 14-17. He stated: "A killing is committed . . . within the purview of a felony-murder statute 'when there is no break in the chain of

State v. Covington

events leading from the initial felony to the act causing death, so that the homicide is linked to or part of the series of incidents forming one continuous transaction.' " We find no intimation in any case that the robbery must be the *proximate* cause of the victim's death. In the present case, the trial judge instructed that the State must prove beyond a reasonable doubt "that the defendant Leroy Richardson stabbed Joseph Maxwell Cook *while* committing the crime of robbery with a dangerous weapon of Coreene Jacobs or Joseph Maxwell Cook or common law robbery of Coreene Jacobs . . . that the stabbing of Joseph Maxwell Cook proximately caused his death." This instruction sufficiently defined the required relationship between the homicide and the felony. The trial judge further instructed that the jury must find beyond a reasonable doubt that the other defendants were acting in concert with Richardson at the time of the homicide. Under the facts of this case, we find no error in the challenged instructions.

Defendant assigns as error the refusal of the trial judge to grant his motions for judgment as of nonsuit.

Upon motion for judgment as of nonsuit, the evidence must be considered in the light most favorable to the State, giving the State the benefit of every reasonable inference to be drawn from the evidence. When there is sufficient evidence, direct or circumstantial, from which the jury could find that the charged offense has been committed and that defendant was the person who committed it, the motion should be denied. *State v. Hoffman*, 281 N.C. 727, 190 S.E. 2d 842; *State v. Goines, supra*.

[7] In the case before us, the State offered substantial evidence through several eyewitnesses that Joseph Maxwell Cook was killed while defendants were engaged in the perpetration of an armed robbery and that defendant Covington not only was taking part in the armed robbery but that he also physically participated in the killing of the victim. Thus, the trial judge correctly overruled defendant Covington's motion for judgment as of nonsuit.

Defendant Covington contends that the argument of the district attorney resulted in prejudicial error.

[8-10] We have consistently held that counsel must be allowed wide latitude in the argument of hotly contested cases. He may argue to the jury the facts in evidence and all reasonable infer-

State v. Covington

ences to be drawn therefrom together with the relevant law so as to present his side of the case. *State v. Monk,* 286 N.C. 509, 212 S.E. 2d 125; *State v. Noell,* 284 N.C. 670, 202 S.E. 2d 750. Whether counsel abuses this privilege is a matter ordinarily left to the sound discretion of the trial judge, and we will not review the exercise of this discretion unless there be such gross impropriety in the argument as would be likely to influence the verdict of the jury. *State v. Wortham,* 287 N.C. 541, 215 S.E. 2d 131; *State v. Westbrook,* 279 N.C. 18, 181 S.E. 2d 572, *vacated and remanded as to death penalty only,* 408 U.S. 939, 92 S.Ct. 2873, 33 L.Ed. 2d 761; *State v. Bowen,* 230 N.C. 710, 55 S.E. 2d 466. Even so, counsel may not employ his argument as a device to place before the jury incompetent and prejudicial matter by expressing his own knowledge, beliefs and opinions not supported by the evidence; *State v. Noell, supra;* and *State v. Monk, supra.* It is the duty of the trial judge, upon objection, to censor remarks not warranted by the evidence or the law and, in cases of gross impropriety, the court may properly intervene, *ex mero motu. State v. Britt,* 288 N.C. 699, 220 S.E. 2d 283.

[11, 12]   Here, the district attorney's argument that deceased had been "a living, breathing human being, just like you and me, and he is gone forever now" was within the bounds of the record evidence. Neither do we find gross impropriety in the district attorney's statement that "everybody is concerned about the rights of the defendants . . . When in God's name are we going to start getting concerned about the rights of the victims?" At this point in the trial, it must have been evident to the jury that defendants' counsel had exercised every precaution to protect each defendant's rights and the district attorney had likewise represented the State. The utterance here complained of seems to be only a stirring plea that the defendants and the State be given equal consideration by the jury. However, a more serious question is raised by portions of the district attorney's argument in which he stated that defense counsel, in their arguments, would tell the jury that they (defense counsel) are "just as concerned that Joseph Maxwell Cook is dead as the solicitor sitting over there. They will make vigorous arguments to you. That is what they are supposed to do. That is their duty. *They are supposed to do everything they can to sway your mind from justice in this case and get their clients off if they can . . . .* " This argument by the district attorney was not supported by

the evidence or the law relevant to this case or any other case. It is true that counsel should represent their clients with all of their skill, ability and resourcefulness, but it is not their duty to sway the jury from justice. We do not approve this language. However, this unfortunate statement tended to reflect upon defense counsel and our judicial system to a greater degree than it prejudiced defendant Covington. The trial judge's prompt aciton in instructing the jury to disregard this argument removed any possibility of reversible error. *State v. Sparrow,* 276 N.C. 499, 173 S.E. 2d 897; *State v. Ray,* 212 N.C. 725, 194 S.E. 482. This assignment of error is overruled.

[13]   Finally, defendant Covington contends that the trial judge erred in failing to suppress the testimony of decedent's wife. Counsel argues that her testimony was irrelevant and served no purpose except to "buy jury sympathy and bias."

The trial judge conducted a *voir dire* hearing and determined that Mrs. Cook's testimony was admissible. She thereupon testified before the jury:

> I am Linnie Cook, and was married to Joseph Maxwell Cook. On that date I last saw him in my back yard at about eleven o'clock a.m. He left driving his pickup truck. At that time he was sixty-three years old and in good health. I did not see him again until approximately three days later when he was dead and I saw his body in the funeral home. When he left our home on the morning of the 13th of December he had no scratches, wounds, or contusions on his forehead and no wound anywhere else on his body as far as I know.

In support of this assignment of error, defendant quotes from Annot., 67 A.L.R. 2d 731, *Admissibility and propriety, in homicide prosecution of evidence as to deceased's spouse and children.* We note that the scope of the annotation is expressly limited to cases "where the evidence is not relevant to any issue in the case other than the question whether the deceased was survived by a widow or children." Most of the cases in the annotation which hold such evidence to be inadmissible are cases bottomed on the fact that the evidence clearly had no relevance to any issue at trial. However, one case cited by defendant Covington warrants our consideration. In *Hathaway v. State,* 100 So. 2d 662, the Florida Court of Appeals granted a new trial on two grounds: (1) the prosecuting attorney was permitted to ask

the accused whether he had testified at the preliminary hearing, and (2) the deceased's wife identified decedent's body *even though defendant admitted the identity of the body* and another witness could have been called to establish the identity of the victim. The Florida court concluded that, under these circumstances, the wife was an incompetent witness to establish the identity of the body. The case, *sub judice,* differs from *Hathaway* in that the testimony of Mrs. Cook was pertinent to establish an element of the crime. Defendant had not stipulated or admitted the cause of Mr. Cook's death and the burden remained on the State to establish all elements of the crime charged, including the proximate cause of decedent's death. Mrs. Cook's marital status was relevant since her relationship with Mr. Cook placed her in a position to testify authoritatively as to her husband's physical condition. Her testimony that Mr. Cook was in good health before he left home on 13 December supported the State's contention that Mr. Cook died from wounds he received on the day of the robbery.

The general rule in this jurisdiction is that, "Every circumstance that is calculated to throw any light upon the supposed crime is admissible" in a criminal case. *State v. Sneeden,* 274 N.C. 498, 164 S.E. 2d 190; *State v. Hamilton,* 264 N.C. 277, 141 S.E. 2d 506, *cert. denied* 384 U.S. 1020, 16 L.Ed. 2d 1044, 86 S.Ct. 1936. Although testimony introduced solely for the purpose of improperly exciting prejudice against a defendant should not be admitted, *State v. Page,* 215 N.C. 333, 1 S.E. 2d 887, evidence which is otherwise competent and material should not be excluded merely because it may have a tendency to prejudice a defendant. *State v. Cross,* 284 N.C. 174, 200 S.E. 2d 27; *State v. Kirby,* 273 N.C. 306, 160 S.E. 2d 24; *State v. Green,* 251 N.C. 40, 110 S.E. 2d 609; *State v. Wall,* 243 N.C. 238, 90 S.E. 2d 383; *State v. Hudson,* 218 N.C. 219, 10 S.E. 2d 730.

Medical testimony subsequently offered by the State did not render Mrs. Cook's testimony incompetent. The State had the burden of proving every element of the crime charged so long as defendant stood upon his plea of not guilty. The State had the right to select its method of proof subject to the enforcement of the rules of evidence and fundamental fair play by the trial judge. Assuming, *arguendo,* that the evidence was erroneously admitted, we do not think that a different verdict would have been returned had the evidence been suppressed.

APPEAL OF DEFENDANT RICHARDSON

[14]  Defendant Richardson contends that the trial judge, in his charge, expressed an opinion as to his guilt in violation of the provisions of G.S. 1-180.

It is well settled that the trial judge shall not express or intimate his opinions as to the innocence or guilt of an accused at any stage of the trial, it being the intent of the law to insure every litigant a fair and impartial trial. G.S. 1-180; *State v. Belk,* 268 N.C. 320, 150 S.E. 2d 481; *State v. Simpson,* 233 N.C. 438, 64 S.E. 2d 568.

Defendant first challenges that portion of the charge in which the trial judge, in recounting his recollection of the evidence, stated:

> As I remember, there was also some evidence received which tended to show that at an earlier time certain witnesses, as I remember, Wade Jacobs and Eula Hunt—again, *take your recollection*—made certain statements to Deputy Sheriff Hubert Stone; that those statements were consistent with the testimony which Wade Jacobs and Eula Hunt gave here in the Courtroom. (Emphasis ours.)

Defendant specifically takes exception to the court's statement that "those statements *were* consistent with the testimony which Wade Jacobs and Eula Hunt gave here in the courtroom." However, the very next instruction by the trial judge was as follows:

> Now, ladies and gentlemen, you must not consider those earlier statements as evidence of the truth of what was said at the earlier time, because they were not made under oath here in the courtroom, *but if you believe that those earlier statements were made and you find that they were consistent with the testimony* that those two witnesses gave here in the courtroom, then you might consider that together with all other facts and circumstances bearing upon this witness' truthfulness *in deciding whether you will believe or disbelieve* what they said here in the courtroom under oath. (Emphasis ours.)

When considered contextually, as we must do according to our often repeated rule, we conclude that the trial judge's instructions made it clear that it was for the jury, and for the jury alone, to find whether Sheriff Stone's testimony was con-

sistent with the courtroom testimony of Wade Jacobs and Eula Hunt. Our conclusion is strengthened by the fact that before Deputy Sheriff Stone testified as to the statements made by Wade Jacobs, the court instructed the jury "anything that this witness should testify that Mr. Jacobs told him on the 13th day of December, 1974, is offered for one purpose only and that is to corroborate the testimony of Mr. Jacobs, *if in fact you find that it does so corroborate his testimony.*" (Emphasis ours.) A like instruction was given before the witness testified concerning the statements of Eula Hunt.

[15] We conclude that this challenged instruction did not deprive defendant Richardson of a fair and impartial trial. Neither do we find prejudicial error in Judge Smith's instructions concerning defendant's right not to testify. In this connection, he charged:

> Now, the defendants and each one of them in this case have not testified or offered evidence. The law of the State of North Carolina and of the United States gives them that right and privilege. This same law also assures each of them that their decision not to offer evidence or not to testify will create no presumption of any kind against them or any of them. Therefore, ladies and gentlemen, you must be very careful in your deliberations not to let the decision of the defendants or any of them to not to offer evidence or to testify influence your decision in any way.

G.S. 8-54, in pertinent part, provides:

> In the trial of all indictments, complaints, or other proceedings against persons charged with the commission of crimes, offenses or misdemeanors, the person so charged is, at his own request, but not otherwise, a competent witness, and his failure to make such request shall not create any presumption against him.

We have held that it is the better practice not to instruct on the defendant's failure to testify. *State v. Barbour,* 278 N.C. 449, 180 S.E. 2d 115. In *Barbour,* defendant did not request the instruction and the trial judge, in effect, instructed that defendant's failure to testify was not to be considered against him. We noted that the instruction was meager but nevertheless held it met minimum requirements.

In *State v. Bryant*, 283 N.C. 227, 195 S.E. 2d 509, we held the following instruction to be adequate:

" . . . [N]o person is required to testify against himself in a criminal case, and the only way that this right can be fully protected is that when a person accused of a crime does not testify, that the jury must not consider his failure to testify one way or the other in reaching a decision in the case; so don't consider in your deliberations the fact that the defendant did not testify in this case."

See also *State v. McNeill*, 229 N.C. 377, 49 S.E. 2d 733. Here the trial judge's instructions comply with the requirements of G.S. 8-54 and exceed the minimal requirements approved by our Court in *Bryant, Barbour* and *McNeill*.

[16] Defendant Richardson next contends that the trial judge erred by overruling his objection to testimony of SBI Agent Wade Anders concerning a search for and apprehension of Richardson.

In *State v. Lampkins*, 283 N.C. 520, 196 S.E. 2d 697, we stated:

The rule in North Carolina is that flight of an accused may be admitted as some evidence of guilt. However, such evidence does not create a presumption of guilt, but may be considered with other facts and circumstances in determining whether all the circumstances amount to an admission of guilt or reflect a consciousness of guilt. Proof of flight, standing alone, is not sufficient to amount to an admission of guilt. An accused may explain admitted evidence of flight by showing other reasons for his departure or that there, in fact, had been no departure. *State v. Self*, 280 N.C. 665, 187 S.E. 2d 93; *State v. Gaines*, 260 N.C. 228, 132 S.E. 2d 485; *State v. Downey*, 253 N.C. 348, 117 S.E. 2d 39; *State v. Godwin*, 216 N.C. 49, 3 S.E. 2d 347 . . . .

\*     \*     \*

. . . Moreover, most jurisdictions recognize that testimony of a law enforcement officer to the effect that he searched for the accused without success after the commission of the crime is competent. See cases collected in Annot., 25 A.L.R. 886; Wharton's Criminal Evidence § 214 (1972). See also *State v. Wallace*, 162 N.C. 622, 78 S.E. 1; *State v. Jones*, 93 N.C. 611.

State v. Covington

Defendant's contention that the evidence was inadmissible because the alleged flight was not in close proximity to the crime is answered in *State v. Self,* 280 N.C. 665, 187 S.E. 2d 93. There we stated:

> In the present case, evidence that defendant left his home 16 days after the alleged offenses were committed is competent to be considered by the jury in connection with other circumstances in passing upon the question of guilt. *State v. Payne,* 213 N.C. 719, 197 S.E. 573 (1938), and cases therein cited.

In instant case, the witness Anders stated that he began a search for Richardson on 13 December 1974. He searched the Stewartsville area, and all of the predominantly black housing projects in Scotland County without success. Although not specifically stated, we think it implicit in Agent Anders' testimony that Richardson's home was visited in the course of the search. On 15 December 1974 the witness, in company with other police officers, went to a house in the rural area of Scotland County where a lady admitted him into the house. He searched the front room, the dining room, the bathroom, and two bedrooms without finding Richardson. However, when he entered the kitchen, a voice said, "Here I am" and Agent Anders then found defendant Richardson crouched between an upright freezer and an upright refrigerator.

We hold that the testimony of SBI Agent Anders relating to his unsuccessful search for defendant which continued for three days after the commission of the crime and his description of defendant Richardson's furtive acts when he was finally located were properly admitted into evidence.

[17] We find no merit in defendant's argument that the district attorney questioned SBI Agent Anders in an unreasonable manner.

The examinations of witnesses is largely in the control of the trial judge and he may take appropriate measures to control the conduct of counsel, witnesses and spectators. 1 Stansbury's North Carolina Evidence § 25 (Brandis Rev. 1973).

Objections to the questions addressed to Agent Anders were apparently addressed to the *admissibility* of the evidence. The record does not reveal that the trial judge was made aware that defendant Richardson objected to the *manner* in which the

district attorney examined the witness. We will not interfere with the exercise of the trial judge's duty to control the conduct and course of a trial absent a showing of manifest abuse. No such abuse has been shown.

### APPEAL OF DEFENDANT NICHOLSON

**[18]** Defendant argues that Judge Smith erred in failing to allow his motion to strike the testimony of James Thomas because the evidence was too remote to be relevant.

Thomas testified that he had known all four of the defendants for some period of time and specifically that he had known Nicholson who lived near him in Laurinburg, North Carolina, for about twenty years. On the 13th day of December 1974, between 10:30 and 11:30 a.m., he saw David Nicholson and Leroy Richardson riding in a blue and white Plymouth Duster. Nicholson was driving and Richardson was sitting in the right front seat. He saw Nicholson stop the car at a point about seven miles from the Robeson County line, look under the seat and then drive off. The automobile belonged to Nicholson's sister. It was later established that the crime was committed about 11:30 a.m. on 13 December 1974.

In a criminal case, every circumstance that is calculated to throw any light upon the alleged crime is admissible. *State v. Sneeden, supra; State v. Hamilton, supra.*

1 Stansbury's North Carolina Evidence § 78, at 237 (Brandis Rev. 1973), contains the following statement concerning tests of relevancy and materiality of evidence:

> The standard of admissibility based on relevancy and materiality is of necessity so elastic, and the variety of possible fact situations so nearly infinite, that an exact rule cannot be formulated. In attempting to express the standard more precisely, the Court has emphasized the necessity of a *reasonable,* or *open and visible* connection, rather than one which is remote, latent, or conjectural, between the evidence presented and the fact to be proved by it, at the same time pointing out that the inference to be drawn need not be a *necessary* one. . . .

The automobile observed at the scene of the crime and in which defendants allegedly fled was identified as a blue and white Plymouth Duster. Thomas' testimony that he saw Nichol-

son and Richardson a short time before the crime in a blue and white Plymouth Duster which belonged to Nicholson's sister bore a reasonable connection to the facts to be proved by the State in order to carry its burden of proof. The evidence tended to show that Nicholson had access to a blue and white Plymouth Duster and to strengthen the eyewitness testimony that Nicholson was the man who remained with the automobile and furnished the "get away" car.

[19] Defendant further argues, without citation of authority, that no foundation was established for the testimony concerning the ownership of the Plymouth automobile. Defendant's objection and motion to strike was lodged after the witness had testified concerning several different matters. It is, therefore, impossible for us to know to what matter it was directed. In this posture of the record, the ruling on the motion to strike was a matter within the trial judge's discretion. See *State v. Cranfield,* 238 N.C. 110, 76 S.E. 2d 353. No abuse of discretion is shown. Defendant did not timely object, exercise his right of cross-examination or request that he be allowed to qualify the witness. Finally, we observe that the testimony of this witness to the effect that he lived in the small town of Laurinburg and that he had known Nicholson for twenty years gives a reasonable foundation for and credence to the challenged testimony. We find no error in the admission of this evidence.

[20]  *State v. Lee,* 248 N.C. 327, 103 S.E. 2d 295, squarely rejects defendant Nicholson's contention that the trial judge erred in not explaining the meaning of the words corroboration and corroborative evidence. In *Lee,* this Court stated:

> . . . The court did not, in its charge, explain the difference between substantive evidence and corroborative evidence. Defendant made no request for such an instruction. The failure to make reference in the charge to the difference between substantive evidence and corroborative evidence and to define each of these terms is not ground for exception. Rule 21, 221 N.C. 558; *S. v. McKinnon,* 223 N.C. 160, 25 S.E. 2d 606; *S. v. Johnson,* 218 N.C. 604, 12 S.E. 2d 278.

Here defendant Nicholson's counsel made no request for such an instruction and upon authority of *State v. Lee, supra,* we overrule this assignment of error.

State v. Covington

The State offered the testimony of Hubert Stone for the limited purpose of corroborating two State's witnesses. Defendant Nicholson argues that the trial judge erred in overruling his objections, denying his motions to strike and in not giving adequate limiting instructions.

The admissibility of prior consistent statements to corroborate a witness whose veracity has been impugned in any way is well recognized in North Carolina. 1 Stansbury's North Carolina Evidence § 51 at 147, 148 (Brandis Rev. 1973) ; *State v. Cook,* 280 N.C. 642, 187 S.E. 2d 104; *State v. Doss,* 279 N.C. 413, 183 S.E. 2d 671, *vacated as to death penalty only* 408 U.S. 939, 33 L.Ed. 2d 762, 92 S.Ct. 2875; *State v. Fox,* 277 N.C. 1, 175 S.E. 2d 561; *State v. Brabham,* 108 N.C. 793, 13 S.E. 217. Trial judges are granted broad discretion in admitting evidence which goes to the credibility of witnesses. *Gibson v. Whitton,* 239 N.C. 11, 79 S.E. 2d 196. Of course, the prior statements are admissible only when they are, in fact, consistent with the testimony of the witness. *State v. Fowler,* 270 N.C. 468, 155 S.E. 2d 83; *State v. Walker,* 269 N.C. 135, 152 S.E. 2d 133. Nevertheless, slight variances in the corroborative testimony do not render it inadmissible. *State v. Bryant,* 282 N.C. 92, 191 S.E. 2d 745, *cert. denied* 410 U.S. 958, 35 L.Ed. 2d 691, 93 S.Ct. 1432 *and* 410 U.S. 987, 36 L.Ed. 2d 184, 93 S.Ct. 1516; *State v. Case,* 253 N.C. 130, 116 S.E. 2d 429, *cert. denied* 365 U.S. 830, 5 L.Ed. 2d 707, 81 S.Ct. 717. Such evidence is admitted, not as substantive evidence of the facts stated, but solely for the purpose of corroborating the witness. *State v. Rose,* 270 N.C. 406, 154 S.E. 2d 492.

Here, when it became apparent to the trial judge that the testimony of the witness Stone was offered for the purpose of corroboration, he instructed the jury: "Anything that this witness should testify that Mr. Jacobs told him on the 13th day of December, 1974 was offered for one purpose only and that is to corroborate the testimony of Mr. Jacobs if, in fact, you find that it does so corroborate his testimony."

[21] Defendant Nicholson first points to the testimony of the witness which related that Wade Jacobs told him that "he saw the car sitting beside the station with the hood raised and said that one subject was at the car at the hood and he said *he looked at him real funny when he drove up.* . . . " Mr. Jacobs did not testify that Nicholson looked at him "real funny when he drove

up"; however, an objection was made and sustained as soon as the language objected to was spoken. The trial judge further instructed the jury that they should not consider this portion of Stone's testimony. Judge Smith then asked counsel if the instruction was sufficient. No response was made to his inquiry. Defendant contends that this language was so prejudicial that the trial judge's instruction could not cure the error.

[22] Ordinarily when incompetent evidence is withdrawn from the jury's consideration by appropriate instructions from the trial judge, any error in admission of the evidence is cured. *State v. Brown,* 266 N.C. 55, 145 S.E. 2d 297; *State v. Green,* 251 N.C. 40, 110 S.E. 2d 609; *State v. Campo,* 233 N.C. 79, 62 S.E. 2d 500. This rule of law is based upon the assumption that jurors have sufficient intelligence and character to comply with the cautionary instructions of the trial judge. *State v. Bruce,* 268 N.C. 174, 150 S.E. 2d 216.

Defendant relies on *Bruton v. United States,* 391 U.S. 123, 20 L.Ed. 2d 476, 88 S.Ct. 1620, to support his argument that the prejudice from the admission of the evidence could not be cured by a cautionary instruction. *Bruton,* however, is clearly distinguishable since in *Bruton,* the error complained of grew out of a joint trial in which the defendant objected to the admission of a non-testifying codefendant's extrajudicial confession which implicated the defendant. This violation of the defendant's constitutional right of confrontation and cross-examination is a far cry from the admission of the evidence here complained of. We note that in *Bruton* Justice Brennan recognized the fact that a trial judge's instruction may effectively limit the prejudicial effect of inadmissible evidence in many cases. He there stated: "It is not unreasonable to conclude that in many cases the jury can and will follow the trial judge's instruction to disregard such information." The evidence in the present case was of little or no prejudicial effect. We, therefore, hold that the trial judge's prompt action effectively cured any possible prejudice growing out of the admission of this evidence.

[23] The witness Stone also testified that Jacobs told him that the car at the scene was a Plymouth or Dodge with a North Carolina license plate. Actually the only description of the automobile given by the witness Jacobs was that it was a blue and white car. Again, upon counsel's objection, the trial

State v. Covington

judge promptly sustained his objection and allowed his motion to strike. Defendant failed to request further instructions. We find no prejudicial error in this minor variation in the witness's testimony. See *State v. Gooding,* 196 N.C. 710, 146 S.E. 806. Officer Stone further testified that Jacobs told him that he saw subjects leaving the scene and that there were four of them. The record shows that Mr. Jacobs testified that he saw the automobile leave the scene but he did not testify as to how many persons were in the automobile. Defendant's objection was promptly sustained and there was no motion to strike. The judge's prompt action removed any prejudice growing out of this slight variance.

When the State offered testimony of witness Stone to corroborate the witness Eula Hunt, the trial judge again instructed the jury that:

> . . . [A]nything that this witness should testify that he might have been told by Eula Hunt is, again, offered for one purpose only and that purpose is to corroborate the testimony of Eula Hunt if you find that it does in fact corroborate the testimony that she gave here in the courtroom.

We find no error in the officer's testimony that Eula Hunt told him that she was inside the station "when three colored males came in the station; one of them had a pocket knife." The record discloses that Eula Hunt testified on direct examination that defendant Richardson had a knife. Thus, Stone's testimony fully corroborated the testimony of the witness Hunt.

[24] Defendant Nicholson argues that he was prejudiced because Officer Stone testified that Eula Hunt said that the car used by defendants was a blue car with a white streak down the side of it and that the car left going toward Laurinburg. Eula Hunt did not testify as to the color of the automobile or the direction in which it traveled as it left the scene. However, there was plenary evidence admitted without objection as to the color of the automobile and the direction it traveled as it left the scene. It is well recognized in this jurisdiction that the admissison of incompetent testimony is cured when substantially the same evidence is theretofore or thereafter admitted without objection. *State v. Little,* 278 N.C. 484, 180 S.E. 2d 17; *State v. Owens,* 277 N.C. 697, 178 S.E. 2d 442; *State v. Cauley,* 244 N.C. 701, 94 S.E. 2d 915.

The testimony of Officer Stone corroborated the testimony of the witnesses Hunt and Jacobs in all respects except as to the minor variations hereinabove discussed.

For the reasons stated, this assignment of error is overruled.

[25] Defendant Nicholson next assigns as error the trial judge's denial of his motions for judgment as of nonsuit. He relies upon the unquestioned rule that evidence which merely suggests the possibility of guilt or which raises only a conjecture as to a defendant's guilt is insufficient to require submission of the case to the jury. *State v. Cutler,* 271 N.C. 379, 156 S.E. 2d 679; *State v. Guffey,* 252 N.C. 60, 112 S.E. 2d 734. However, it is equally well recognized in this jurisdiction that upon motion for nonsuit, the question for the court is whether, upon consideration of the evidence in the light most favorable to the State, there is reasonable basis upon which the jury might find that the offense charged in the indictment has been committed and the defendant was the perpetrator or one of the perpetrators of the crime. *State v. Alford,* 289 N.C. 372, 222 S.E. 2d 222; *State v. Evans,* 279 N.C. 447, 183 S.E. 2d 540; *State v. Cutler,* 271 N.C. 379, 156 S.E. 2d 679.

This Court considered the conviction of a defendant upon the theory that he was a principal in the second degree in *State v. Birchfield,* 235 N.C. 410, 70 S.E. 2d 5, and there Justice Ervin, speaking for the Court, stated:

The mere presence of a person at the scene of a crime at the time of its commission does not make him a principal in the second degree; and this is so even though he makes no effort to prevent the crime, or even though he may silently approve of the crime, or even though he may secretly intend to assist the perpetrator in the commission of the crime in case his aid becomes necessary to its consummation. *S. v. Hart,* 186 N.C. 582, 120 S.E. 345; *S. v. Hildreth,* 31 N.C. 440, 51 Am. D. 369.

To constitute one a principal in the second degree, he must not only be actually or constructively present when the crime is committed, but he must aid or abet the actual perpetrator in its commission. [Citations omitted.] A person aids or abets in the commission of a crime within the meaning of this rule when he shares in the criminal intent

of the actual perpetrator *(S. v. Oxendine,* 187 N.C. 658, 122 S.E. 568), and renders assistance or encouragement to him in the perpetration of the crime. *S. v. Hoffman,* 199 N.C. 328, 154 S.E. 314; *S. v. Baldwin,* 193 N.C. 566, 137 S.E. 590. While mere presence cannot be constituted aiding and abetting in legal contemplation, a bystander does become a principal in the second degree by his presence at the time and place of a crime where he is present to the knowledge of the actual perpetrator for the purpose of assisting, if necessary, in the commission of the crime, and his presence and purpose do, in fact, encourage the actual perpetrator to commit the crime. [Citations omitted.]

The statement of law in *Birchfield* has been quoted with approval in the recent cases of *State v. Little,* 278 N.C. 484, 180 S.E. 2d 17, and *State v. Aycoth,* 272 N.C. 48, 157 S.E. 2d 655.

The evidence against defendant Nicholson tended to show that he was seen driving his sister's blue and white Plymouth Duster automobile with defendant Richardson as a passenger within an hour of the time the crime was committed. A blue and white Plymouth Duster automobile was parked in front of Jacobs' store during the time the crime was being committed and during that time, Nicholson was standing by the car "looking across the field." The hood of the automobile was up and when Mr. Jacobs appeared Nicholson stuck his head under the hood. Richardson was seen entering the Duster automobile and none of the defendants were observed at the scene of the crime after the Plymouth Duster departed. Just before the automobile hurriedly departed, Mr. Jacobs fired toward and struck it at least one time. Witnesses observed a blue and white Duster automobile at about 11:30 a.m. traveling north on Highway 501 toward Laurinburg, North Carolina. The car was occupied by "three or four colored people." One of the occupants had a bloody rag beside his head. On the same day, a blue and white Plymouth Duster automobile was found parked on Stewartsville Road in Laurinburg, North Carolina, about one-quarter of a mile from where Nicholson lived. Blood was found on the headrest on the passenger side of the front seat and the right front window was broken out. Nicholson's fingerprints were found on the hood of the automobile. All defendants had lived in the Town of Laurinburg for at least fifteen years.

In our opinion, this evidence was sufficient to reasonably support findings by the jury that defendant Nicholson arrived

at the scene of the crime in the Plymouth Duster automobile with the other defendants; that defendants Covington, Richardson and McEachin entered the Jacobs' store with the intent to there commit an armed robbery; that Covington was armed with a shotgun as he entered the store; and that Nicholson remained with the automobile as a lookout and for the purpose of furnishing the " get away" car in which defendants later fled the scene of the crime. Thus, the evidence would permit, but not require, the jury to find that defendant Nicholson was present at the scene of the crime, that he shared in the criminal intent to commit the crime of armed robbery with the other defendants who committed the crime and that he actually rendered assistance to them in the perpetration of the crime.

[26] When an accused enters into a conspiracy to commit an armed robbery, he is criminally responsible for a murder committed by another conspirator during the robbery even though he did not actually participate in that attempt. *State v. Carey,* 285 N.C. 497, 206 S.E. 2d 213; *State v. Fox, supra.* Those who aid, abet, counsel or encourage, as well as those who execute their designs are conspirators. *State v. Carey, supra; State v. Turner,* 119 N.C. 841, 25 S.E. 810.

The trial judge correctly overruled the defendant Nicholson's motion for judgment as of nonsuit.

Defendant Nicholson also assigns as error the argument of the district attorney. We have previously considered and rejected the major contentions brought forward in this assignment of error. Counsel for defendant Nicholson has diligently brought forward and attacked nearly the entire argument of the district attorney. We deem it sufficient to say that we have carefully reviewed the entire argument of the district attorney and we find no departure from the facts of the case or the relevant law in the district attorney's argument as would result in error warranting a new trial.

[27] Defendant avers that Judge Godwin erred when he refused to grant all the items requested in his motion for a bill of particulars.

Prior to trial, defendant moved for a bill of particulars in which he sought: (1) the names and addresses of all witnesses proposed to be used by the State, (2) all statements made by any of defendants to any proposed witnesses and (3) a detailed

statement of the testimony of each witness to be offered by the State. Judge Godwin entered an order granting the relief requested in prayers (1) and (2). Further, he specifically ordered that defense counsel be permitted to confer with proposed witnesses Stone and Johnson and that he be furnished a copy of the autopsy report.

The function of a bill of particulars is to inform an accused of the nature of the evidence the State proposes to offer and the granting of a bill of particulars lies largely within the trial judge's discretion. *State v. Cameron,* 283 N.C. 191, 195 S.E. 2d 481.

Here defendant was furnishesd a list of all the State's witnesses who probably would be offered at trial and a copy of all statements made by defendant and his codefendants to police officers concerning the alleged crime. Defendant had the right to examine proposed State's witnesses in order to amplify the clearly stated charge contained in the bill of indictment. We find nothing in the statutes or our case law which requires the State to furnish to the accused a recital of the entire testimony of each proposed witness. We, therefore, find no error in Judge Godwin's order granting defendant's motion for a bill of particulars.

[28] We find no merit in defendant's contention that the trial judge erred in consolidating the cases for trial and in denying his motion for severance. Each defendant was charged in a separate bill of indictment with the crime of first-degree murder. The charges relate to the same crime which grew out of the same acts. Most of the evidence which was competent as to one defendant was admissible as to the other defendants. Thus, the trial judge, acting within his discretion, properly ordered the cases consolidated for trial. G.S. 15-152 (replaced effective 1 September 1975 by G.S. 15A-926) ; *State v. King,* 287 N.C. 645, 215 S.E. 2d 540; *State v. Bass,* 280 N.C. 435, 186 S.E. 2d 384; *State v. Yoes,* 271 N.C. 616, 157 S.E. 2d 386. There is no basis for defendant's motion for severance of offenses since the indictment charged only one crime.

[29] The action of the trial judge in denying defendant's motion for a special venire was also a matter within his sound discretion. *State v. Yoes, supra.* The record shows an order entered by Jugde Godwin denying the motion "after hearing arguments of counsel for defendant David Wayne Nicholson and the dis-

State v. Covington

trict attorney . . . . " The only argument concerning this matter which defendant presents in his brief is that the deceased was well known and highly regarded in his township. The trial judge had the advantage of affidavits and argument of counsel neither of which is before us. Under these circumstances, we find no cause to disturb Judge Godwin's discretionary ruling.

[30] Defendant further contends that the trial judge erred by allowing the court reporter, at the request of the jury, to read back the testimony of witnesses Wade Jacobs and Hubert Faircloth. Defendant Nicholson argues that he was prejudiced by this procedure because the jury could not, at that point, observe the demeanor of the witnesses. The trial judge may, in his discretion, allow or refuse a jury request for restatement of the evidence. 23-A C.J.S. Criminal Law § 1377. Even if this had not been a matter within the trial judge's discretion, any prejudice to defendant was cured by the fact that the jury had observed both Wade Jacobs and Hubert Faircloth upon the witness stand during lengthy direct examinations and cross-examinations.

[31] We next consider defendant's assignment of error regarding the trial judge's instructions. Nicholson contends that there was error in the instructions concerning the corroborative testimony of the witness Hubert Stone. The trial judge instructed:

> Now, ladies and gentlemen, you must not consider those earlier statements as evidence of the truth of what was said at the earlier time, because they were not made under oath here in the courtroom, but if you believe that those earlier statements were made and you find that they were consistent with the testimony that those two witnesses gave here in the courtroom, then you might consider that together with all other facts and circumstances bearing upon this witness' truthfulness in deciding whether you will believe or disbelieve what they said here in the courtroom under oath.

We have previously noted that adequate cautionary instructions were given prior to the admission of this witness' testimony. The above-quoted instructions are in accord with our decisions. *State v. Cook*, 280 N.C. 642, 187 S.E. 2d 104; *State v. Case*, 253 N.C. 130, 116 S.E. 2d 429, *cert. denied* 365 U.S. 830, 5 L.Ed. 2d 707, 81 S.Ct. 717; 3 North Carolina Index 2d, Criminal Law § 117.

State v. Covington

[32]   Defendant Nicholson contends that the trial judge failed
to apply the law of aiding and abetting to the facts. He argues
that the charge did not adequately require the jury to find that
he shared in the criminal purpose to commit the crime. Judge
Smith, *inter alia,* charged:

> . . . [I]t is not necessary for a person to be guilty of a crime
> that he do all of the acts necessary to constitute the crime.
> If two or more persons act together with a common pur-
> pose to commit a crime, each of them is held responsible
> for the acts of the other, done in the commission of that
> crime. . . .

*   *   *

Now, a person may also be guilty of murder in the
first degree although he does not do any of the acts neces-
sary to constitute murder in the first degree. A person who
aids and abets another to commit murder in the first degree
is also guilty of that crime, just as if he had personally done
all the acts necessary to constitute the crime. Now, I charge,
ladies and gentlemen, that for you to find the defendant,
David Wayne Nicholson, guilty of murder in the first de-
gree because of aiding and betting, the State must prove
from the evidence and beyond a reasonable doubt: First,
that the crime of murder in the first degree—as that was
previously explained to you under the "murder-felony rule"
—was committed by Leroy Richardson, Coleman Covington
and James McEachin, or any one of them; second, that
the defendant David Wayne Nicholson, though not physi-
cally present in the store at the time the alleged crime was
committed shared the criminal purpose of either Leroy
Richardson, Coleman Covington or James McEachin or any
one of them and that to the knowledge of Leroy Richardson,
Coleman Covington or James McEachin, or either of them,
was aiding and was in a position to aid all or any one of
them at the time the alleged crime was committed. However,
ladies and gentlemen, a person is not guilty of a crime
merely because he is present at the scene, even though he
may silently approve of a crime or secretly intends to assist
with the commission. To be guilty he must actively aid the
person or persons committing the crime or in some way
communicate to the person or persons his intention to so
assist in the commission. So, I charge that if you find from
the evidence and beyond a reasonable doubt that on or about

the 13th of December, 1974, Leroy Richardson, Coleman Covington, James A. McEachin or any one of them committed the crime of murder in the first degree, as that was earlier explained to you under the "murder-felony rule," and that the defendant David Wayne Nicholson was outside and not physically present, and that the criminal purpose of Leroy Richardson, Coleman Covington or James McEachin, or any one of them which you find might be guilty of murder in the first degree had knowledge that the defendant David Wayne Nicholson was outside and was aiding them or in a position to then aid—to then at the time aid in the alleged crime of first degree murder, and that the first degree murder was committed by the person whom he was in a position to aid and abet, as I have heretofore explained, you would then return a verdict of guilty of murder in the first degree as to David Wayne Nicholson.

This and other portions of the charge make it eminently clear that in order to convict defendant Nicholson, it must be proven beyond a reasonable doubt that he shared with his co-defendants the criminal purpose to commit the crime of armed robbery.

[33] Defendant's argument that the trial judge erred in his instructions as to possible verdicts is feckless. Judge Smith submitted the possible verdicts of murder in the first degree and not guilty. All of the evidence tended to show that the murder of Mr. Cook was perpetrated during the course of an armed robbery. Such a killing is murder in the first degree and the trial judge was therefore not required to submit lesser included offenses to the jury for its consideration. *State v. Bryant,* 280 N.C. 551, 187 S.E. 2d 111, *cert. denied* 409 U.S. 995, 34 L.Ed. 2d 259, 93 S.Ct. 328; *State v. Donnell,* 202 N.C. 782, 164 S.E. 352. Neither was the trial judge required to instruct on circumstantial evidence absent a request for such instruction, the court having correctly instructed on the burden and quantum of proof. *State v. Warren,* 228 N.C. 22, 44 S.E. 2d 207. This is particularly true when, as here, the State relied mainly on direct evidence to prove its case. *State v. Hicks,* 229 N.C. 345, 49 S.E. 2d 639. No request for such instruction appears in this record.

[34] This defendant contends that the trial judge expressed an opinion as to defendant's guilt when he gave instructions as to the taking of verdicts.

State v. Covington

When Judge Smith completed his charge, he stated:

If and when you agree upon your verdict or verdicts, they will be taken in this manner: The Clerk will first take the verdict of the defendant—with reference to Leroy Richardson; following the completion of that and any motions that his attorney might like to make, the Clerk will take the verdict with reference to the defendant Coleman Covington and following the completion of that and any motions his attorney might wish to make, the Clerk will then take the verdict with reference to the defendant James McEachin; following that and following any motions his attorney might like to make, the Clerk will take the verdict concerning the defendant David Wayne Nicholson.

It is the better practice to instruct the clerk, in the absence of the jury, as to the procedure to be followed in taking verdicts. However, we do not believe that a juror, uninstructed in the course and procedure of a criminal trial, would be aware of the usual motions made upon the return of a verdict so that he would interpret this instruction to be an expression of opinion as to defendant's guilt by the trial judge. We note that the trial judge did not mention that Nicholson's counsel should make any motions. This assignment of error is overruled.

Defendant Nicholson's other assignments of error are formal and do not require further discussion.

### APPEAL OF DEFENDANT McEACHIN

Defendant McEachin assigns as errors the exclusion of certain prospective jurors for cause because of their answers to questions concerning capital punishment, the denial of his motion for a new trial and the denial of his motion to set aside the verdict for errors of law assigned and to be assigned. The questions presented by these assignments of error are fully considered and rejected in other portions of this opinion. We, therefore, overrule these assignments of error.

[35] We have carefully considered every assignment of error brought forward by defendants and find no error which would justify disturbing the verdicts. Accordingly, we find no error in the trial which affects the verdicts returned by the jury. However, on 2 July 1976, the Supreme Court of the United States, in *Woodson v. North Carolina*, _____ U.S. _____, 44 U.S.L.W. 5267, invalidated the death penalty provisions of G.S. 14-17

(Cum. Sup. 1975), the statute under which each defendant was indicted, convicted and sentenced to death. In compliance with that decision, the judgment in Case No. 74CR18379 imposing a sentence of death upon Coleman Covington, the judgment in Case No. 74CR18381 imposing a sentence of death upon James McEachin, the judgment in Case No. 74CR18378 imposing a sentence of death upon Leroy Richardson and the judgment in Case No. 74CR18382 imposing a sentence of death upon David Wayne Nicholson are vacated and by authority of the provisions of 1973 Sess. Laws c. 1201, § 7 (1974 Session), sentences of life imprisonment are substituted in each case.

[36] All defendants, relying upon *Witherspoon v. Illinois*, 391 U.S. 510, 20 L.Ed. 2d 776, 88 S.Ct. 1770, contend that their constitutional rights were violated by the exclusion of jurors because of their views concerning capital punishment. Their contention requires little discussion in light of the holding in *Woodson v. United States, supra.* In *Witherspoon,* the Supreme Court made it clear that the decision did not invalidate the conviction of a defendant as opposed to a sentence of death. We quote a portion of Footnote 21 from *Witherspoon:*

> . . . Nor does the decision in this case affect the validity of any sentence *other* than one of death. Nor, finally, does today's holding render invalid the *conviction,* as opposed to the *sentence,* in this or any other case.

We hold that defendants' constitutional rights were not violated by the exclusion of jurors because of their views concerning capital punishment.

These cases are remanded to the Superior Court of Robeson County with directions (1) that the presiding judge, without requiring the presence of defendants, enter as to each defendant a judgment imposing life imprisonment for the first-degree murder of which he has been convicted; and (2) that in accordance with these judgments the clerk of superior court issue commitments in substitution for the commitments heretofore issued. It is further ordered that the clerk furnish to each defendant and his attorney a copy of the judgment and commitment as revised in accordance with this opinion.

No error in the verdicts.

In No. 74CR18379 (Coleman Covington)—Death sentence vacated.

In No. 74CR18381 (James McEachin)—Death sentence vacated.

In No. 74CR18378 (Leroy Richardson)—Death sentence vacated.

In No. 74CR18382 (David Wayne Nicholson)—Death sentence vacated.