STATE OF NORTH CAROLINA v. STEVEN MICHAEL BURLESON

No. 141

(Filed 15 December 1971)

**1. Rape § 6— rape prosecution — submission of issue of lesser offense**

Where all the evidence tends to show an accomplished rape, and neither the State nor defendant offered any evidence to support a guilty verdict of assault with intent to commit rape, the trial judge is not required to submit to the jury the issue of guilt of the lesser offense.

**2. Criminal Law § 112— instruction on affirmative defense — burden of proof**

Defendant's contention in a rape case that the trial court erroneously failed to charge the jury "that an affirmative defense must be proved to the satisfaction of the jury instead of beyond a reasonable doubt," *held* without merit.

**3. Rape § 4— evidence of res gestae — assaults on victim's relatives**

Testimony by a rape victim's mother and grandmother as to the events that occurred in the home from the time of defendant's violent entry until the consummation of the rape was competent and relevant as part of the *res gestae,* including their testimony that they had been assaulted by the defendant.

APPEAL by defendant under G.S. 7A-27 (a) from *Johnston, J.,* June 7, 1971 Criminal Session of GUILFORD Superior Court (High Point Division).

Defendant was indicted for the rape of Marguerite Patterson.

The evidence offered by the State tends to show the facts narrated below.

On the night of November 27, 1970, about eleven o'clock, defendant, aged 15, knocked on the front door of the Patterson residence. The three occupants, Marguerite Patterson, aged 18, and Mrs. Ruby Patterson, Marguerite's mother, and Mrs. Kate Bryant, Ruby's mother, had gone to bed. Mrs. Bryant, who occupied one of the bedrooms, was asleep. Marguerite and her mother were in twin beds in another bedroom watching television when they heard the knock on the front door. Mrs. Patterson got out of bed and went to the front door.

Upon opening the front door, Mrs. Patterson noticed that the person at her door was the boy she had previously seen walking across the yard. Although they did not know defendant, the Pattersons understood he had been living next door with his grandmother. Defendant asked if Mrs. Patterson knew who he was. She observed that he acted like he was frightened and could not talk, and she saw "red blotches" on his neck. Apprehensive that something was wrong at the neighbor's house, Mrs. Patterson opened the screen door to find out "what had happened" next door. Thereupon, defendant jumped into the house, holding his knife on Mrs. Patterson, and said, "Let's get back inside."

Defendant backed Mrs. Patterson at knife point through the living room to the hall door and then backed Mrs. Patterson and Mrs. Bryant, who had been aroused, into the room where Marguerite was in bed. There defendant took off his clothes and at knife point demanded that the three women take off their clothes. The only light then in this room was provided by the television. Mrs. Bryant managed to pull the television cord from the socket and extinguish this light. When this occurred Mrs. Patterson moved toward a window and jerked the drapes apart, intending to try to raise the window and jump. However, defendant quickly found the switch to the room light, turned on the light and threatened to kill Mrs. Bryant if Mrs. Patterson did not move away from the window—grabbing the knife and putting it on Mrs. Bryant. When Mrs. Bryant opened the door, defendant "lunged for her and knocked her down in the hall and hit her back on the molding." Defendant dragged Mrs. Bryant across the floor and got her on her bed. Soon thereafter Mrs. Bryant got up, slammed the door to her room, knocked the screen out of the window and jumped from the window to the ground six feet below. Mrs. Patterson and Marguerite tried to close the door to Marguerite's bedroom but could not close it completely on account of defendant's shoes and clothes. Mrs. Patterson fled from the house and went to the home of a neighbor.

While defendant was involved with Mrs. Patterson and Mrs. Bryant, Marguerite had gotten out of bed. She went to the phone and called the police. When defendant returned to Marguerite's room, pushing his way through the door, he "turned around and picked up the phone and listened for a minute and then put it down." Defendant then gave his un-

divided attention to Marguerite. He stuck the knife at her throat, took her clothes off, backed her onto the bed and there had complete sexual intercourse with her, without her consent and against her will, notwithstanding her protests and pleading. (The words spoken by defendant and the details of the rape and unnatural indignities to which Marguerite was subjected are not germane to decision and therefore are omitted.)

When Police Sergeant Wood arrived, he found Marguerite and defendant, both naked. Defendant had a knife at her throat. She broke loose, ran behind the officer to her mother, saying, "Don't let him get at me anymore." When defendant started toward the officer, he took out his revolver and said: "Son, don't come any closer or I will have to kill you." Thereupon, defendant dropped the knife. The knife was offered in evidence.

Officers Whitaker and Wood testified in detail as to statements by Marguerite made shortly after their arrival at the Patterson residence. These statements were in accord with and corroborative of Marguerite's testimony.

Evidence offered by defendant consisted of his testimony and that of Mrs. Anita Green, defendant's mother.

Defendant testified that he and some friends had been at his grandmother's house next door to the Patterson house; that during that day he had consumed "between fifteen and twenty-four beers, sniffed two or three tubes of glue," and had taken one of his grandmother's nerve pills; that "the last thing he remember[ed] on this night was that he left for Five Points walking to get some paper bags to sniff glue in"; and that he remembered nothing else until he was in the Juvenile Detention Home of Guilford County.

Mrs. Green testified that defendant had been living with his grandmother; that she saw defendant in the early morning of November 28, 1970, at the police station; that he was in a "stupor state" and "had some white substance around his mouth which she assumed was glue"; and that "[s]he felt that he was not himself and did not know where he was that night or what he was doing."

The court instructed the jury they could return one of three verdicts: (1) Guilty of rape as charged in the bill of indictment; (2) guilty of rape with recommendation that the punishment be imprisonment for life; and (3) not guilty.

The jury returned a verdict of guilty of rape as charged with recommendation that defendant's punishment be imprisonment for life. In accordance with the mandate of G.S. 14-21, a judgment of life imprisonment was pronounced. Defendant excepted and appealed.

*Attorney General Morgan and Assistant Attorneys General Eatman and League for the State.*

*Morgan, Byerly, Post & Herring, by James F. Morgan, for defendant appellant.*

BOBBITT, Chief Justice.

No question is presented as to the sufficiency of the evidence to support the verdict. The State's evidence that defendant was guilty as charged in the bill of indictment was positive and plenary.

Under the heading, "Assignments of Error," defendant asserts the court erroneously failed to charge the jury in the three respects discussed below.

Since no exception appears in the case on appeal, there is no basis in the record for consideration of the assertions denominated "Assignments of Error." "An assignment of error not supported by an exception is ineffectual and will not be considered on appeal." *State v. Jones,* 278 N.C. 259, 264, 179 S.E. 2d 433, 437 (1971), and cases cited. Notwithstanding his failure to comply with established procedural requirements, the seriousness of the crime and the age of the defendant impel us to examine and consider defendant's purported "Assignments of Error."

[1] There is no merit in defendant's first assertion, that the court erroneously failed to submit "the lesser included offense of assault with intent to commit rape." The following statement from *State v. Rhodes,* 275 N.C. 584, 592, 169 S.E. 2d 846, 851 (1969), applies with equal force to the present case: "All the evidence tended to show an accomplished rape and to prove defendant's guilt beyond a reasonable doubt. Neither the State nor defendant offered any evidence upon which a verdict of guilty of the lesser and included offense of assault with intent to commit rape could have been based. The judge was not required to submit that issue to the jury, and a request to do so would have been properly refused."

[2] There is no merit in defendant's second assertion, that the court erroneously failed to charge the jury "that an affirmative defense must be proved to the satisfaction of the jury instead of beyond a reasonable doubt." We find no basis in the record for this assertion. On the contrary, it appears that the court placed no burden of proof on defendant in respect of an affirmative defense. The following excerpt from the charge indicates the court's instructions pertinent to that aspect of the case: "[T]he court . . . instructs you that if you should find that on the occasion of which the State complains that the defendant, by reason of sniffing glue or drinking beer, or both, did not have the mental capacity sufficient to form a criminal intent, and that he had not previously formed a criminal intent to rape Marguerite Patterson, and had thereafter participated in sniffing glue or drinking beer, that it would be your duty to return a verdict of not guilty." Obviously, this instruction was not prejudicial to defendant.

[3] There is no merit in defendant's third assertion, that the court had erroneously failed to charge the jury "that they should disregard the testimony of the mother and grandmother in regard to their being assaulted, except in that it shows force used in the alleged rape, the assault charges being a matter for another court." Nothing in the record suggests that defendant was on trial for assaults on Mrs. Patterson and Mrs. Bryant. The evidence as to what defendant did to them was incidental and preliminary to his rape of Marguerite. All that occurred in the Patterson residence from the time of defendant's violent entry until the consummation of the rape was competent and relevant as part of the *res gestae*. Testimony as to defendant's assaults upon Mrs. Patterson and upon Mrs. Bryant was competent *inter alia* to explain their removal from the scene and consequent inability to interfere when Marguerite was raped.

Finding no error of law, the verdict and judgment will not be disturbed.

No error.