STATE OF NORTH CAROLINA v. ROOSEVELT WALDEN

No. 540A83

(Filed 28 August 1984)

1. **Criminal Law § 73.4— statements by victim—admissibility as part of res gestae and to show state of mind**

   Statements by a murder victim tending to show that she did not want to see the defendant and did not want defendant in her home were properly admissible as an exception to the hearsay rule as part of the *res gestae* and to show the victim's state of mind.

2. **Criminal Law § 73.2— statements by decedent—admission for non-hearsay purpose**

   Testimony by a witness that decedent had asked him to come by her house was properly admitted for the non-hearsay purpose of explaining the witness's subsequent conduct in going to decedent's house.

State v. Walden

**3. Homicide § 20.1— photographs of decedent's body—admission for illustrative purposes**

Two photographs of the body of decedent lying on the floor were properly admitted to illustrate testimony concerning the position, location and appearance of the body of decedent after she was shot by defendant.

**4. Criminal Law § 169.3— exclusion of evidence—failure to place in record—admission of similar evidence**

Defendant failed to show prejudice in the exclusion of testimony where he failed to include in the record what the witness's answer to the proper question would have been and where substantially the same evidence was subsequently admitted through the testimony of defendant.

**5. Criminal Law § 73.2— testimony not hearsay**

Testimony that after the victim was fatally shot by defendant, the witness heard a voice say, "I guess you're satisfied now, ain't you M---- F----?" was not inadmissible hearsay since it was not offered to prove that defendant was in fact satisfied after he shot and killed the victim but was offered to prove that the statement was in fact made by someone present at the scene of the crime.

**6. Criminal Law § 77.1— statement competent as admission**

A statement made by defendant to a witness that he was fleeing to New Jersey rather than "turning himself in" was competent as an admission against defendant, and the trial court's exclusion of such statement was error favorable to defendant.

**7. Criminal Law § 99.3— examination of shotgun by jury—instructions by court—no expression of opinion**

When the prosecutor requested that a shotgun used in a murder be passed to the jury for examination and the trial court sustained an objection to the prosecutor's suggestion as to how the jury should examine the shotgun, the trial court did not express an opinion in then instructing the jury that it could "look at the weapon, if you like, and use the hammer to cock it, if you desire."

**8. Criminal Law § 116— instruction that defendant not required to testify**

When the defendant testifies, the trial court is not required to instruct the jury, upon request or otherwise, that defendant cannot be compelled to testify. G.S. 8-54.

**9. Homicide § 21.5— first-degree murder—sufficiency of evidence**

The State's evidence was sufficient to support conviction of defendant for first-degree murder by shooting the victim with a shotgun.

DEFENDANT appeals as a matter of right, pursuant to G.S. 7A-27(a), from the judgment and sentence entered by the *Honorable Elbert S. Peel, Jr., Judge* presiding, at the 11 July 1983

Criminal Session of Superior Court, HALIFAX County. Heard in the Supreme Court 9 May 1984.

*Rufus L. Edmisten, Attorney General, by Christopher P. Brewer, Assistant Attorney General, for the State.*

*W. Lunsford Crew, for defendant-appellant.*

FRYE, Justice.

I.

Defendant brings forward numerous assignments of error which he alleges entitle him to a new trial. Those assignments of error allege that the trial court erred by admitting various hearsay statements into evidence, by expressing an opinion on the evidence when it gave an instruction to the jury following an improper statement by the prosecutor, by failing to instruct the jury that defendant was not required to testify, and by denying defendant's motions for a mistrial and dismissal of the charges against him. Our review of the entire record discloses that no error was committed by the trial court.

On 14 July 1983, a jury convicted defendant of murder in the first degree. The victim was Donnie Mae Kittrell. After the jury had rendered its verdict, the trial court sentenced defendant to life imprisonment.

The evidence relied upon by the jury to find defendant guilty of murder in the first degree was as follows:

The State's evidence disclosed that on 28 December 1982, Donnie Mae Kittrell was married to Bernard Kittrell and had five children, four of whom were living with Mr. and Mrs. Kittrell. Although Mrs. Kittrell was married, she and the defendant, Roosevelt Walden, had been going together for quite some time, and they saw each other on a regular basis.

During the evening hours on 28 December 1982, Mr. Kittrell was at work in Lewiston, North Carolina, and Mrs. Kittrell was at home with her four children. Terry Boone, Richard Moore and the defendant's nephew, Victor Dwayne Walden, were also present at the Kittrell residence. At least one of the men ate dinner at the Kittrell residence while they were visiting Mrs. Kittrell.

Between 8:30 and 9:00 p.m., the defendant arrived at the Kittrell residence while the three men were present and knocked on

the front door. Defendant was alone and unarmed. After Mrs. Kittrell discovered that it was defendant at the door, she refused to open the door. Thereafter, the three men and Mrs. Kittrell's eldest son, Tommy Earl Hill, attempted to get defendant to leave the premises. He refused to do so.

After being refused entry to the Kittrell residence, defendant attempted to force his way into the house. Then, the three men and Tommy Hill leaned against the front door to prevent the defendant from entering the house. The front and back doors were locked. After several unsuccessful attempts to break into the house, defendant left the scene.

Between ten and fifteen minutes later, defendant returned to the Kittrell residence. He was armed with a single-barrel .12 gauge shotgun. After unsuccessfully attempting to enter the front door, defendant tried to enter the back door. By this time, the men in the house had moved a refrigerator against the back door. Nevertheless, defendant was able to force his way into the house through the back door. As defendant entered the house, Mr. Moore and Mr. Walden attempted to take the shotgun away from him. Mr. Boone left the house so that he could go to a neighbor's house to call the police. As the three men struggled over the shotgun, the shotgun discharged into the wall. No one was hurt. Thereafter, Mr. Moore and Mr. Walden shoved the defendant out the front door of the house.

Shortly thereafter, defendant returned to the front door with the shotgun and shot through the front door. He then entered the house and began looking for Mrs. Kittrell. After a short while, Mrs. Kittrell appeared from one of the rooms of the house and was walking through the kitchen. Defendant was a few steps behind her. As Mrs. Kittrell walked through the kitchen, defendant shot her in the back. After defendant had left the scene, Mr. Walden checked the victim, but was unable to detect a heartbeat. As Terry Boone was returning to the victim's house, he heard a gunshot and saw the defendant leaving the house in his car.

Defendant left the scene of the shooting and went to the home of Mr. and Mrs. Ernest Williams. Mr. Williams subsequently drove the defendant to Suffolk, Virginia, where he caught a bus to Newark, New Jersey, where defendant's sister lived. Defendant remained in Newark, New Jersey, until he was apprehended

by the F.B.I. in early March 1983. After waiving extradition, he was returned to North Carolina.

Dr. William Franklin Hancock, Jr., M.D., a pathologist, performed the autopsy on the victim. Dr. Hancock testified that the victim died from a shotgun wound to the back. He defined the biological cause of death as being "a combination of excessive bleeding and massive damage to [Mrs. Kittrell's] vital organs."

The defendant testified in his own behalf. His testimony was virtually consistent with the evidence presented by the State, except it differed, in the most significant respects, as follows: Defendant testified that he always carried his shotgun to the Kittrell residence because he was afraid of Mr. Kittrell. Defendant also testified that his shotgun was accidentally fired through the front door of the Kittrell residence as a result of a struggle between himself, Mr. Moore and Mr. Walden, which occurred after they had pushed him out of the front door. Defendant testified that he then entered the house and reloaded his shotgun because "[he] was afraid to let [Mr. Moore and Mr. Walden] have his gun." According to defendant, after he had looked through the house for Mrs. Kittrell, he was standing in the den doorway with the shotgun in his hand when Mrs. Kittrell walked by him. Although the shotgun was loaded, it was broken down and incapable of being fired unless the breech was closed up and the hammer cocked. As defendant saw Mrs. Kittrell, he stepped toward her and at that time, someone grabbed him from behind and the shotgun fired, shooting Mrs. Kittrell in the back. Defendant did not know who grabbed him. After kneeling down beside the victim's body, defendant left the scene because he was afraid.

II.

Defendant's first assignment of error alleges that the trial court erred by allowing several State's witnesses to testify concerning various statements made by the decedent. Defendant contends that these statements were inadmissible hearsay which was prejudicial to him. We disagree.

[1] During direct examination in response to the statement by the prosecutor, "Tell what she [Mrs. Kittrell] said," State's witness Terry Boone testified that, "Well, she was saying that she didn't want to see him, telling him to go ahead on." Richard

Moore testified that Mrs. Kittrell stated, "Please don't let him in," and Victor Walden testified, "Like she started to the door, you know, and she asked who was at the door?"

Assuming *arguendo* that the statements were hearsay, they were properly admissible as an exception to the hearsay rule as part of the *res gestae*. The statements were admissible because they were part of the transactions which immediately preceded the homicide in the instant case and arguably precipitated it. *See State v. Covington*, 290 N.C. 313, 226 S.E. 2d 629 (1976); *State v. Burleson*, 280 N.C. 112, 184 S.E. 2d 869 (1971); 1 Brandis on North Carolina Evidence § 158 (1982). Additionally, the statements were admissible to show the victim's state of mind since they tended to show that the victim did not want to see the defendant and did not want him in her home. *See generally* 1 Brandis on North Carolina Evidence § 162 (1982).

[2] Defendant also alleges that the trial court erred by admitting additional testimony of Mr. Moore concerning statements made by the decedent. In response to the question asked on direct examination, "Why did you go to [Mrs. Kittrell's] house?," Mr. Moore responded, "She asked me to come by." On re-direct examination Mr. Moore answered the question, "Why did Mrs. Kittrell ask you there?," by saying, "She asked me to come around to the house." Both of the above statements were clearly offered for a non-hearsay purpose since they were offered to explain Mr. Moore's subsequent conduct in going to Mrs. Kittrell's residence after she had made the statement to him. As stated on numerous occasions by this Court, "the statements of one person to another are admissible to explain the subsequent conduct of the person to whom the statement was made." *State v. Maynard*, 311 N.C. 1, 16, 316 S.E. 2d 197, 205 (1984); *see also State v. Tate*, 307 N.C. 242, 297 S.E. 2d 581 (1982). Defendant's assignment of error is rejected.

### III.

[3] Defendant next contends that the trial court erred by admitting into evidence two photographs of the decedent's body. Defendant argues that the photographs "were not necessary or really helpful to illustrate the testimony of the witness."

It is well settled law in North Carolina that a witness may use a photograph to illustrate his testimony and make it more in-

telligible to the court and jury. *State v. Young*, 291 N.C. 562, 231 S.E. 2d 577 (1977). As long as the photograph is properly authenticated as a correct portrayal of the conditions observed and related by the witness who uses the photograph to illustrate his testimony, "the fact that it is gory or gruesome, or otherwise may tend to arouse prejudice, does not render it inadmissible." *Young*, 291 N.C. at 570, 231 S.E. 2d at 582; *State v. Atkinson*, 275 N.C. 288, 167 S.E. 2d 241 (1969), *death sentence vacated*, 403 U.S. 948 (1971).

In the instant case, two photographs of the body of the decedent lying on the kitchen floor were admitted into evidence to illustrate the testimony of Terry Boone. These photographs were not gruesome or gory nor were they excessive in number. They were admitted for the limited purpose of illustrating the testimony of Mr. Boone, and they did in fact illustrate his testimony concerning the position, location and appearance of the body of the decedent after she had been shot by the defendant. Therefore, the photographs were properly admitted.

IV.

[4]   By his next assignment of error, defendant contends that the trial court erred by not allowing State's witness Richard Moore to testify concerning Mrs. Kittrell's use of his charge account at a local grocery store. Defendant argues that this testimony "would be some evidence that he loved her and had no reason to kill her." Defendant's argument is without merit.

The relevancy of the above testimonial evidence is questionable to say the least. However, assuming *arguendo* that the testimony was relevant, defendant has failed to include in the record what Mr. Moore's answer to the proffered question would have been and thereby he has failed to show prejudice. *State v. Maynard*, 311 N.C. 1, 316 S.E. 2d 197 (1984).

Additionally, we note that the same or similar evidence was admitted into evidence when the defendant was testifying. During the direct examination of defendant by defense counsel, defendant was allowed to testify concerning the use of two of his charge accounts by the decedent. Since substantially the same evidence that defendant initially sought to elicit from Mr. Moore was subsequently admitted into evidence through the testimony of

defendant, the defendant cannot show any prejudice resulting from the trial court's previous exclusion of such evidence. *State v. Hageman*, 307 N.C. 1, 296 S.E. 2d 433 (1982); *State v. Matthews*, 299 N.C. 284, 261 S.E. 2d 872 (1980). This assignment of error is rejected.

## V.

[5] Defendant's next assignment of error alleges that the trial court erred by admitting the testimony of a State's witness in violation of the hearsay rule. On direct examination by the prosecutor, Victor Walden testified that after the victim was fatally shot by the defendant, he heard a voice say, "I guess you're satisfied now, ain't you M----- F----?" Mr. Moore was unable to identify the person who made the statement. For this reason, defendant argues that the statement was inadmissible hearsay.

The above statement was not hearsay, since it was not offered to prove the truth of the matter asserted therein. That is, the testimony of Mr. Moore was not offered to prove that defendant was in fact satisfied after he had shot and killed the victim, but it was instead offered to prove that the statement was in fact made by someone present at the scene of the crime. Therefore, it was not inadmissible because it was hearsay.

Assuming *arguendo* that the statement was inadmissible for some other reason, defendant has failed to show that he was prejudiced by the admission of that statement. Stated differently, defendant has failed to show that there is a reasonable possibility that had the statement not been admitted at trial, a different result would have been reached. *See* G.S. 15A-1443(a).

## VI.

[6] During the course of the trial, Ernest Williams, a friend of the defendant, testified concerning a conversation he had with the defendant shortly after the crime had occurred. Mr. Williams testified that while he was driving the defendant to Suffolk, Virginia, to catch a bus to Newark, New Jersey, the following conversation transpired, "I asked him why didn't he turn himself in and he said because his brother had killed someone." At this point, counsel for defendant objected and the trial court sustained the objection and instructed the jury not to consider that testimony. Subsequently, defendant moved for a mistrial, and his motion was

denied by the trial court. Now, on appeal, the defendant contends that the statement "is of such a nature as to mislead the jury and certainly prejudice the defendant." Therefore, defendant asserts that his motion for a mistrial was improperly denied by the trial court. We disagree.

The trial court sustained defendant's objection to the above testimony and thereafter instructed the jury not to consider that testimony. This was error in the defendant's favor. The statement showed why defendant was fleeing to New Jersey rather than "turning himself in" and was relevant to the issues in the case as an admission against him. 2 Brandis on North Carolina Evidence § 167 (1982). The statement by defendant to Williams was competent, material, and relevant and therefore admissible. This assignment of error is rejected.

## VII.

[7] Near the end of the presentation of rebuttal evidence by the State, the prosecutor made the following request of the trial court:

BY MR. BEARD:

At this time the State would request permission, because of the particular offense, in this case, to pass State's Exhibit #1 [the shotgun used to shoot Mrs. Kittrell] to the members of the jury, and I request each one of them if they will, to pull the hammer back to get the pressure that it takes to pull the hammer back, and also to pull the trigger, see what is required to pull the trigger.

Immediately after the prosecutor had made the statement, counsel for the defendant objected to it, and the trial court sustained the objection. Thereafter, the trial court instructed the jury as follows: "You may look at the weapon, if you like, and use the hammer to cock it, if you desire." On appeal, defendant contends that the statement by the trial court "allow[ed] the jury to infer that the court had an opinion about the guilt of the defendant and the State's theory of the shooting, and thus violate[d] the guaranteed right of the defendant to a fair and impartial trial without bias, prejudice or opinion on the part of the Trial Judge." We disagree.

The shotgun had been properly introduced into evidence. Therefore, the State was entitled to have it passed to the jury for examination. We can see no reason why a prosecutor should not be allowed to suggest to a jury how it should examine real evidence, so long as he does not give his opinion as to the proof of a fact or state facts not in evidence. *See State v. Forney*, 310 N.C. 126, 310 S.E. 2d 20 (1984). We find nothing in the trial court's actions which suggests that the trial court improperly expressed an opinion to the jury. Therefore, this assignment of error is rejected.

## VIII.

**[8]**  Relying upon G.S. 8-54, defendant argues that the trial court erred by denying his request for an instruction to the jury that although he had testified, he was not required to do so. He contends that "the same logic that requires that instruction [required by G.S. 8-54], if requested, would also apply to defendant's specific request that the jury be instructed likewise that defendant is not compellable to testify." We find this argument to be without merit.

G.S. 8-54 provides as follows:

> In the trial of all indictments, complaints, or other proceedings against persons charged with the commission of crimes, offenses or misdemeanors, the person so charged is, at his own request, but not otherwise, a competent witness, and his failure to make such request shall not create any presumption against him. But every such person examined as a witness shall be subject to cross-examination as other witnesses. Except as above provided, nothing in this section shall render any person, who in any criminal proceeding is charged with the commission of a criminal offense, competent or compellable to give evidence against himself, nor render any person compellable to answer any question tending to [in]criminate himself.

In *State v. Bovender*, 233 N.C. 683, 65 S.E. 2d 323 (1951), this Court, in interpreting G.S. 8-54, stated:

> The decisions of this Court referring to this statute seem to have interpreted its meaning as denying the right of counsel to comment on the failure of a defendant to testify.

The reason for the rule is that extended comment from the court or from counsel for the state or defendant would tend to nullify the declared policy of the law that the failure of one charged with crime to testify in his own behalf should not create a presumption against him or be regarded as a circumstance indicative of guilt or unduly accentuate the significance of his silence. *To permit counsel for a defendant to comment upon or offer explanation of the defendant's failure to testify would open the door for the prosecution and create a situation the statute was intended to prevent.* (Emphasis added.)

*Id.* at 689-90, 65 S.E. 2d at 329.

The policy served by instructing the jury upon defendant's request concerning G.S. 8-54, when he does not testify, is an attempt to ensure that the jury will not draw a negative or unfavorable inference from the defendant's failure to testify. However, if the defendant chooses to testify in his own behalf, as the defendant did here, there exists no reason to instruct the jury on defendant's decision to testify since the jury does not have any reason to draw a negative or unfavorable inference from that circumstance. Defendant, however, is not entitled to an instruction the inference of which would be to insure that the jury look favorably upon his willingness to testify. Therefore, we hold that when the defendant testifies, the trial court is not required to instruct the jury, upon request or otherwise, that the defendant cannot be compelled to testify.

## IX.

[9] By his last assignment of error, defendant contends that the trial court erred by denying his motions for a mistrial and for dismissal of the charges against him at the end of the State's evidence and at the end of all the evidence, and after the jury verdict had been rendered. Defendant contends that all of the aforementioned errors argued on appeal, taken collectively, denied him a fair and impartial trial. We disagree.

After carefully reviewing the transcript of the trial proceedings, we find no error which would have warranted the trial court's granting defendant's motions for a mistrial. Additionally, there are certain fundamental legal principles which, when ap-

plied to the facts of this case, further negate any allegation of error in the trial court's denial of defendant's motion to dismiss the charges against him. Those fundamental principles were succinctly stated in *State v. Bell*, 311 N.C. 131, 316 S.E. 2d 611 (1984) as follows:

> It is well established law that ruling on a motion to dismiss, the trial court is to consider the evidence in the light most favorable to the State; that the State is entitled to every reasonable inference to be drawn therefrom; that contradictions and discrepancies are for the jury to resolve; and that the defendant's evidence, unless favorable to the State, is not to be taken into consideration. *State v. Earnhardt*, 307 N.C. 62, 296 S.E. 2d 649 (1982).

*Id.* at 138, 316 S.E. 2d at 615.

Applying the above principles to this case, we hold that there was substantial evidence adduced at trial of each and every element of the offense of murder in the first degree for which defendant was convicted and of defendant being the perpetrator of the crime. Therefore, defendant's motion to dismiss was properly denied.

Having carefully reviewed all of the assignments of error raised by the defendant, we find that defendant received a fair trial free from prejudicial error.

No error.