Filed 10/20/15  P. v. Williams CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>ANDRE WILLIAMS,<br><br>    Defendant and Appellant. | F067227<br><br>(Super. Ct. No. F11904102)<br><br><br>**OPINION** |

APPEAL from a judgment of the Superior Court of Fresno County.  James Petrucelli, Judge.

Candace Hale, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Brian G. Smiley and Michael A. Canzoneri, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

# INTRODUCTION

Andre Williams, also known as Andre Leon Williams, was convicted at the conclusion of a jury trial of two counts of assault with a deadly weapon (Pen. Code,[1] § 245, subd. (a)(1), count 1 [samurai sword], count 3 [club]), and making a criminal threat (§ 422, count 2). In a bifurcated proceeding, the jury found true allegations that defendant was subject to a prior prison term enhancement (§ 667.5, subd. (b)) and two prior serious felony convictions within the meaning of the three strikes law (§§ 667, subds. (b)-(i), 1170.12, subds. (a)-(d)).

The trial court denied defendant's motions for a new trial and his invitation to strike the prior serious felony allegations pursuant to *People v. Superior Court* (*Romero*) (1996) 13 Cal.4th 497. The court sentenced defendant to prison for terms of 25 years to life on each count, ordering counts 1 and 3 to be served concurrently and count 2 to be served consecutively to count 1.

On appeal, defendant contends the trial court erred in sustaining the prosecutor's objections to defense counsel's closing argument on the following matters: (1) defense counsel's paraphrasing the reasonable doubt instruction as a high level of certainty; (2) defense counsel's argument appealing to the jurors' common sense concerning the victim's conduct; (3) defense counsel's argument concerning how defendant came into possession of the sword; and (4) defense counsel's argument that defendant did not assault the victim with a sword or a club. Defendant also contends the trial court improperly denied his motion to represent himself. We affirm the judgment.

# FACTS

## *Prosecution Evidence*

Troy Agueros lived in the Shady Acres trailer park in Fresno in July 2011. Defendant and his wife also lived in the trailer park across from Agueros. Agueros and

---

[1]Unless otherwise designated, all statutory references are to the Penal Code.

defendant had been friends for about two years and worked together doing maintenance projects around the trailer park, as well as work together on defendant's boat.

Agueros was outside his trailer when he saw defendant walking past late on the evening of July 13, 2011. Defendant was agitated as he approached Agueros. Agueros understood defendant was not supposed to be there that evening and asked defendant what he was doing there. Defendant opened his jacket, exposing a large samurai sword. Defendant said he was there "to fucking kill the neighbor and his wife" because they had been in a fight earlier that day.

Agueros told defendant to calm down because he was already in trouble and to let the authorities handle the situation. Defendant, however, was beside himself with anger and there was no reasoning with him. Defendant pulled out the sword, which appeared real and dangerous. Although defendant had problems in the past with other tenants in the trailer park, defendant had never directed anger toward Agueros. In a moment, however, defendant turned on Agueros and Agueros did not recognize defendant.

Defendant cussed at Agueros, telling him he was also part of the problem defendant was having, and he started swinging the three-foot long sword. Agueros was standing by a small fenced area with shrubbery that was between him and defendant. Agueros kept moving back and forth around this area to keep his distance from defendant, who was still swinging the sword. At one point defendant swung the sword so close to Agueros that it "scared the hell out of [him]."

Defendant continued swinging the sword so hard that Agueros "could hear the air coming off of it." Agueros was afraid to extend his arm for fear he would lose his hand or fingers. Agueros was doing some "high stepping" to evade defendant. Agueros estimated he was running away from defendant for 10 minutes. Agueros threw a barbeque in defendant's path and jumped over a small picnic table. The two were eight to nine feet apart. Agueros continued to plead with defendant to stop, but defendant seemed deranged.

3.

Defendant threatened to mutilate Jake, Agueros's elderly dog, and to kill Agueros's mother. Agueros ran away from defendant to the back of his own trailer and stood by his large Bronco truck for about 10 minutes. Agueros then went into his trailer and locked the door. From inside his trailer, Agueros saw defendant enter into a nearby trailer owned by Richard Martin. For the first time in his life, Agueros called the police. When deputies from the Fresno County Sheriff's Office arrived, defendant was still inside Martin's trailer.

On cross-examination, Agueros said he saw three neighbors come out of their trailers during the incident. Martin was one of those. When Martin came out of his trailer, everyone looked at each other and defendant dropped the sword to his side and stopped hollering for a moment. Agueros did not call out for help from Martin because he thought the situation was "obvious." Martin turned away and was gone.

Sheriff's deputies arrived at the trailer park at 11:20 p.m. After taking a statement from Agueros, deputies contacted defendant and found him belligerent, profane, and uncooperative. Defendant smelled of alcohol. When one of the deputies shouted out that she could not find the sword, defendant replied there was not a sword. Martin also told deputies there was no sword. Deputies followed Martin to the back of his trailer where he lifted a piece of carpet and uncovered the sword. The sword was 20 to 24 inches long and had a plastic sheath.

Three days after the sword incident, during the early morning hours of July 16, 2011, Agueros was asleep inside his trailer when he was awakened by the loud noise of something beating on the outside of his trailer. It sounded like a tree had fallen on his trailer. After four or five strikes, Agueros heard screaming. Agueros recognized defendant's voice. Agueros called 911, heard the dial tone, but then tossed his phone on the bed. Agueros opened the door to his trailer to tell defendant to get out of there and leave him alone. Agueros was concerned because the area defendant was beating on was

4.

close to a window and Agueros was concerned defendant was going to break it out. Prior to this incident, the trailer had only one dent on it from a tree.

As Agueros opened the door, defendant pulled the door open and reached into the trailer with a two-inch round, two-foot long bat, swinging the bat at Agueros's head. Agueros raised his hand to deflect the bat, which then hit Agueros's hand. Defendant "busted" Agueros's hand. Agueros believed the bat would have knocked him "clean out" if defendant had caught Agueros in the head with the bat. Defendant was agitated and appeared to Agueros to be out of control. Defendant ran away from the trailer and out of sight. Agueros called 911 to report the incident.

Defendant was later arrested in the trailer of a neighbor. He appeared to be sleeping or passed out on the couch. Defendant was aggressive, belligerent, and smelled of alcohol. The bat or club was not found.

### Defense Evidence

Defendant testified that on the evening of July 13, 2011, he was visiting in the trailer park with his neighbor, Jerry Hernandez. Defendant accepted an offer by Hernandez to take one of Hernandez's swords, a samurai sword. When defendant left Hernandez's trailer, he placed the sword in the waistband of his shorts. As defendant was walking through the trailer park, Agueros asked defendant what he was doing there. Defendant said he accused Agueros of spreading rumors about him and he began to cuss at Agueros. The two argued.

Defendant lifted his shirt because of what Agueros said to him and then put his shirt back down. Defendant admitted he showed the sword and the scabbard to Agueros, but denied removing the sword from the scabbard.

Martin testified he heard an argument between defendant and Agueros. Martin invited defendant into his trailer to calm down. Martin did not hear defendant threaten Agueros. Martin did not notice defendant was carrying a sword until he had been inside his trailer for a few minutes. Defendant told Martin he was angry at Agueros for

5.

"running his mouth about things." Martin thought defendant was cooperative when deputies arrived.

Defendant testified he arrived at Shady Acres on foot in the early morning on July 16, 2011. Defendant walked by Agueros's trailer, but never saw him. Hernandez invited defendant into his trailer for coffee and defendant fell asleep on the couch. The next thing defendant knew, he was awakened by deputies and taken to a patrol car in handcuffs. Defendant denied having a bat or club that morning and swinging it at Agueros.

## DISCUSSION

### 1.     Reasonable Doubt Argument

During closing argument to the jury, defense counsel described reasonable doubt as the highest proof our justice system recognizes and added it required the People to prove their case by "a high level of certainty." The trial court sustained the prosecutor's objection and instructed the jury to disregard the statement of counsel because it "is not the law" and the jury would "be instructed on the law by the [c]ourt." Defendant argues his trial counsel's argument was an accurate legal statement and the prosecutor's objection to an accurate statement of the law lowered the prosecution's burden of proof. Defendant argues this denied him his Fourteenth Amendment rights to due process and a fair trial. We disagree.

California law imposes a duty on the trial court to instruct the jury on the presumption of innocence in favor of the defendant and the prosecution's duty of proving the defendant's guilt beyond a reasonable doubt. (§ 1096; *People v. Aranda* (2012) 55 Cal.4th 342, 352-354.) The trial court's statutory obligation to instruct the jury on these principles is satisfied by instructing the jury with CALJIC No. 2.90 or CALCRIM No. 220. The failure to give the instruction does not necessarily constitute state law error. Although it is preferred, the standard instruction is not mandatory. (*People v.*

*Aranda*, *supra*, at p. 354.)  The federal due process clause does not require a trial court to use any particular phrase or form of words when instructing the jury on this principle. The dictates of due process are satisfied so long as the trial court's instructions to the jury express the substance of the presumption of innocence.  (*Id.* at p. 355; *Taylor v. Kentucky* (1978) 436 U.S. 478, 485.)

The constitutionality of the standard reasonable doubt instruction under the due process clause has been upheld by the California and United States Supreme Courts. (*People v. Freeman* (1994) 8 Cal.4th 450, 501-504; *Victor v. Nebraska* (1994) 511 U.S. 1, 5-10.)  Our high court has cautioned that modifying the standard instruction is perilous and generally should not be done.  (*People v. Freeman*, *supra*, at p. 504.)  As this court noted over a decade ago, innovative and well-intentioned efforts by trial courts to explain the concept of reasonable doubt have created confusion, uncertainty, and have led to reversals on appeal.  (*People v. Johnson* (2004) 119 Cal.App.4th 976, 986.)  Defense counsel's interpretation of the phrase "reasonable doubt" during closing argument was itself subject to the kind of confusion and uncertainty that can lead to error.

The trial court instructed the jury with CALCRIM No. 220,[2] one of the standard instructions on reasonable doubt.  On appeal, we presume the jurors understand, correlate, and follow the court's instructions.  (*People v. Sanchez* (2001) 26 Cal.4th 834,

---

[2]The trial court instructed the jury with CALCRIM No. 220 as follows:

"A defendant in a criminal case is presumed to be innocent.  This presumption requires that the People prove a defendant guilty beyond a reasonable doubt.  Whenever I tell you that the People must prove something, I mean they must prove it beyond a reasonable doubt.

"Proof beyond a reasonable doubt is proof that leaves you with an abiding conviction that the charge is true.  The evidence need not eliminate all possible doubt, because everything in life is open to some possible or imaginary doubt.

"In deciding whether the People have proved their case beyond a reasonable doubt, you must impartially compare and consider all the evidence that was received throughout the entire trial.  Unless the evidence proves the defendant guilty beyond a reasonable doubt, he is entitled to an acquittal and you must find him not guilty."

852; *People v. Hernandez* (2010) 181 Cal.App.4th 1494, 1502; *People v. Ibarra* (2007) 156 Cal.App.4th 1174, 1181.)

The jury is presumed to have followed what is unquestionably a correct statement of the prosecution's burden of proof. Under these circumstances, there was no way the jury could have applied a lower burden of proof on the prosecution even if, as defendant argues, his counsel fashioned an accurate interpretation of the reasonable doubt instruction; the jury was instructed to follow the trial court's legally accurate instruction.

We conclude defendant's counsel was not precluded from arguing, from the evidence adduced at trial, why the jury should harbor reasonable doubt. The defendant was not deprived of due process and the prosecution did not have a lower burden of proof.

## 2. Prosecutor's Objections During Closing Argument

Defendant argues the trial court improperly sustained objections by the prosecutor and advised the jury to disregard what defense counsel said because counsel made accurate and appropriate factual and legal arguments in his closing statement. Defendant contends the trial court violated his Sixth and Fourteenth Amendment rights to effective assistance of counsel, a fair trial, and due process by improperly limiting defense counsel's closing argument. We disagree.

### A. Reasonable Doubt Instruction

Defendant reiterates his contention the court erred in sustaining the prosecutor's objection to defense counsel's depiction of reasonable doubt as a "high level of certainty," arguing that in addition to lowering the prosecution's burden of proof, it also "encouraged the jury to disregard all [of] counsel's arguments."

After the trial court sustained the prosecutor's objection, defense counsel extensively argued the jury had to believe beyond a reasonable doubt that Agueros was telling the truth and determine whether he was a credible witness. In doing so, defense

8.

counsel marshalled the evidence he believed undermined Agueros's credibility and argued it to the jury in the light most favorable for defendant. Defense counsel had the opportunity to argue all of the inferences that could be drawn from the testimony and had the last clear chance to persuade the jury "that there may be reasonable doubt of the defendant's guilt." (*Herring v. New York* (1975) 422 U.S. 853, 862.) We reject this contention.

**B.      Defense Counsel's Invitation to the Jury to Apply Common Sense to Victim's Account**

During his closing argument, defense counsel questioned whether the People's case made sense and appealed to the jury to use its common sense in evaluating the evidence. The trial court sustained an objection by the prosecutor that this statement misstated the law and instructed the jury to disregard counsel's comment. Defendant contends this was error. We disagree.

In closing argument, defense counsel noted that during the alleged incident with the sword, Agueros was ducking, running, high stepping, and jumping over picnic tables. Defense counsel asked the jury whether this account sounded reasonable and appealed to their common sense. Defense counsel added that at this time, Martin walked out of his trailer and looked at Agueros without exchanging words. Although Agueros said he was being attacked with a sword, he did not yell out to Martin for help.

Defense counsel described this as a "weird experience." Defense counsel asked the jury whether under the circumstances of an attack it was reasonable to believe Martin would turn around and go back into his trailer after merely staring at Agueros. Counsel asked the jurors whether this appealed to their common sense. Counsel then referred to another tenant named Bill coming out of his trailer and again argued that Agueros failed to call out for help.

A third time, defense counsel asked the jurors whether this appealed to their common sense. On this occasion, the prosecutor objected that counsel misstated the law,

the trial court sustained the objection and advised the jury to disregard counsel's statement.

The People point out that defense counsel asked jurors whether Agueros's account appealed to the jurors' common sense multiple times during closing argument before, during, and after the portion of oral argument reviewed above. There were over a dozen such references by defense counsel during oral argument and only one objection was brought by the prosecutor and sustained by the trial court after defense counsel appealed to the jury to use common sense. Defense counsel was not foreclosed from asking the jurors to apply their common sense to the evidence presented at trial. Even if the trial court erred in sustaining the single objection by the prosecutor, the error was harmless beyond a reasonable doubt. (*Chapman v. California* (1967) 386 U.S. 18, 24.)

### C. Instruction to Disregard Counsel's Reference to Defendant's Choice to Testify

During closing argument, defense counsel argued defendant could have hidden behind his Fifth Amendment right not to testify but instead testified. The trial court sustained objections by the prosecutor to these statements and advised the jury to disregard counsel's statements. Defendant contends the trial court was confusing defense counsel's argument with the error caused when a prosecutor improperly comments on the defendant's failure to testify in violation of *Griffin v. California* (1965) 380 U.S. 609 (*Griffin*). Defendant argues *Griffin* does not limit defense counsel's commentary on a defendant's choice to testify, and it was error for the trial court to sustain the prosecutor's objection.

We disagree with defendant's characterization of his counsel's statement, which appeared to be leading toward an argument that defendant's testimony was more reliable because he testified rather than remaining silent. In effect, defense counsel was attempting to turn the *Griffin* rule, which acts as prophylactic shield to protect a defendant from improper prosecutorial commentary on his or her exercise of the Fifth

10.

Amendment right to not testify, into a sword to heighten the defendant's credibility for testifying. To do so would undermine over a century of jurisprudence concerning how triers of fact evaluate the credibility of witnesses.

The People note it has long been the case that a trial court may instruct on matters affecting the credibility of a testifying defendant in the same manner that it instructs a jury to consider any other witness. A 19th century decision by the United States Supreme Court set forth the basis for the *Griffin* rule and noted that a testifying defendant's credibility is to be challenged and weighed in the same manner "as any other witness." (*Reagan v. United States* (1895) 157 U.S. 301, 305-306, 308.) The People argue the jury fairly evaluated defendant's credibility because the court instructed the jury with CALCRIM No. 226, the instruction guiding the jury on how to evaluate the testimony of all witnesses, which included defendant. We agree with the People.

The People cite to an opinion of a sister jurisdiction that reviewed a criminal defendant's assertion of error because the trial court denied his request for an instruction to the jury stating that although he testified, he was not required to do so. In *State v. Walden* (1984) 311 N.C. 667, 676-677, the Supreme Court of North Carolina rejected this suggested corollary to the *Griffin* rule. The *Walden* court noted the public policy served by instructing the jury pursuant to General Statutes of North Carolina section 8-54 (G.S. 8-54)—that no negative presumption can be used against a defendant who has not testified—and reasoned as follows in holding a defendant does not have a right to an instruction highlighting the fact he or she did testify:

> "The policy served by instructing the jury upon defendant's request concerning G.S. 8-54, when he does not testify, is an attempt to ensure that the jury will not draw a negative or unfavorable inference from the defendant's failure to testify. However, if the defendant chooses to testify in his own behalf, as the defendant did here, there exists no reason to instruct the jury on defendant's decision to testify since the jury does not have any reason to draw a negative or unfavorable inference from that circumstance. Defendant, however, is not entitled to an instruction the

11.

inference of which would be to insure that the jury look favorably upon his willingness to testify. Therefore, we hold that when the defendant testifies, the trial court is not required to instruct the jury, upon request or otherwise, that the defendant cannot be compelled to testify." (*State v. Walden*, *supra*, 311 N.C. at p. 677.)

Although *Walden* analyzed a proposed jury instruction by a criminal defendant, we find its reasoning equally persuasive to oral argument by defense counsel. We agree with the People that defense counsel was not entitled to use the fact his client testified to establish his credibility simply because he had a right not to testify under the Fifth Amendment. The trial court instructed the jury with CALCRIM No. 226, which set forth all the criteria jurors are to employ in evaluating every witness's credibility, including testifying defendants. The trial court did not err in sustaining the prosecutor's objection to this portion of defense counsel's closing argument.

### D. Objection to "Speculative" Statement by Defense Counsel

Defense counsel also argued defendant went to Jerry Hernandez's home and Hernandez offered defendant a sword. In recollecting the trial testimony, defense counsel stated defendant "saw that Mr. Hernandez had several swords, relics, whatnot, on his shelf. And he asked, I believe, Mr. Hernandez, the testimony is going to show that Mr. Hernandez said, hey, look, take one." The trial court sustained the prosecutor's objection that this statement was speculative and told the jury to disregard it. Defendant argues this was error. Even if this was error, it was necessarily harmless because defense counsel was permitted to continue with the gist of his argument on this point.

Immediately after the objection was sustained, defense counsel argued defendant took a sword from Hernandez and this was how he was in possession of a sword. Counsel continued that defendant walked from Hernandez's trailer to his own trailer, which was across from Agueros's trailer, and had an intense verbal confrontation with Agueros. Counsel argued this was why defendant was upset but, even so, Martin never heard defendant threaten Agueros, Agueros's mother, or Agueros's dog.

12.

The prosecutor was apparently objecting to defense counsel's use of the phrase "I believe" as speculative. The objection, however, did not deter defense counsel from emphasizing his point that defendant was in possession of a samurai sword offered to him by Hernandez and then entered into what amounted to a shouting match with Agueros while he was in possession of the sword. Defense counsel's larger point was made to the jury, and defendant was not deprived of his counsel's closing argument because the trial court sustained the prosecutor's objection.

### E. Defense Counsel's Argument that there was no "Assault" with a Club

Toward the end of closing argument, defense counsel stated defendant did not assault Agueros with a sword or a club, and he did not make a criminal threat. The prosecutor objected this was an improper legal conclusion by defense counsel because that determination was for the jury. Defense counsel replied he was making an argument. The trial court sustained the objection and told defense counsel to move on with his argument. Defendant contends it was error for the trial court to sustain the objection. The People reply that even if the objection was improperly sustained, any error was harmless. We agree with the People.

During other stages of his argument, defense counsel argued, without interruption by the prosecutor, that defendant did not commit any offense. Defense counsel argued at no point did defendant make any threat to Agueros, his mother, or his dog, and "[a]t no point in time did [defendant] chase [Agueros] with a sword." Counsel characterized the incident as a verbal disagreement. Counsel further argued defendant went to Hernandez's trailer, asked for coffee, and fell asleep in Hernandez's trailer. Counsel concluded his argument to the jury by stating the People had to prove their case beyond a reasonable doubt, and he expressed confidence the jury would find defendant not guilty of the charges.

13.

Defendant correctly notes his trial counsel did nothing wrong in arguing defendant did not commit an assault or make a criminal threat. Defense counsel was marshalling facts he believed demonstrated defendant did not commit an offense. Ideally, the prosecutor should have exercised restraint as defense counsel made this concluding point to the jury, and the trial court could have advised the jury that counsel was making an argument. We do not find, however, defendant's trial counsel was foreclosed from making an oral argument based on the evidence supporting defendant's theory of the case. Where, as here, a trial court errs in sustaining an objection, the error is harmless when the jury is free to consider the weight to accord to each witness's testimony and the trial court's ruling did not hamper the defendant's ability to argue what inferences should be drawn from the evidence and to otherwise present a defense. (*People v. Harris* (2013) 57 Cal.4th 804, 853.) We conclude defendant had the ability to present his theory of the case to the jury, and any error in sustaining the prosecutor's objection was harmless.

**3.      Defendant's *Faretta* Motion**

After the trial court had announced the jury's verdicts, and just as the bifurcated hearing on the truth of defendant's prior convictions was to commence, defendant brought a motion to represent himself pursuant to *Faretta v. California* (1975) 422 U.S. 806 (*Faretta*). After conducting a hearing, the trial court denied defendant's motion. Defendant contends the trial court erred in denying his motion. We disagree.

**A.      Prior Proceedings and First *Faretta* Hearing**

On March 8, 2012, over 10 months prior to the commencement of the trial, defendant's first *Faretta* motion was granted. Between March 8, 2012, and June 14, 2012, defendant sought and was granted five continuances. On June 14, 2012, the trial court granted defendant's motion to be relieved as counsel of record and appointed the public defender to represent defendant.

14.

The jury was empaneled on January 28, 2013, and reached its verdict on the substantive allegations on February 1, 2013. Although the trial court initially understood defendant would be waiving his rights and admitting the truth of his prior convictions, defense counsel conferred with defendant and told the court defendant wanted a jury trial on the bifurcated issues. The court explained to defendant that it was unavailable for any proceedings the following week and a trial on the bifurcated issues would have to be postponed until February 11, 2013. The case was continued.

On February 11, 2013, defendant personally made an oral motion for a new trial on the ground the jury was tainted and an oral motion pursuant to *People v. Marsden* (1970) 2 Cal.3d 118. Both motions were denied. After the *Marsden* hearing, defendant made a new *Faretta* motion to represent himself. Defendant told the court he believed it would be in his best interest to invoke *Faretta* and represent himself because he was not comfortable with defense counsel anymore. The court noted defense counsel had represented defendant, it was a critical stage of the proceedings, and part of the court's responsibility was to protect defendant's rights.

The court explained to defendant the bifurcated proceeding was a specific process and the court did not believe the same standard applied for defendant to represent himself. The court asked defendant to address these points. Defendant replied he understood the seriousness of this phase of the trial, but given the paperwork and opportunity to research and do a thorough investigation, he could do the same job as his attorney. The court observed there was a jury waiting and even with research defendant would not be prepared given the specific legal issues involved.

The court further noted its concern defendant had been "bouncing back and forth" between representing himself and having appointed counsel. After noting defense counsel had done an excellent job, the court found defendant was "just not happy with the verdict and you're trying to be obstreperous." The court denied the second *Faretta* motion.

## B. Analysis

A trial on prior convictions is a phase of the larger trial proceeding. In a bifurcated trial, a defendant should make a decision concerning self-representation prior to the commencement of the whole trial. A request for self-representation at a reasonable time prior to the beginning of the trial on the primary offense is consistent with *Faretta* and California precedent. (*People v. Givan* (1992) 4 Cal.App.4th 1107, 1114.) A *Faretta* motion made at the midtrial stage is addressed to the sound discretion of the trial court and a defendant does not have an unconditional right to self-representation. (*People v. Givan*, *supra*, at p. 1115.)

Even though untimely, it is still error for a trial court to fail to conduct a *Faretta* hearing and to summarily deny a midtrial request for self-representation. (*People v. Rivers* (1993) 20 Cal.App.4th 1040, 1047.) If a defendant makes a timely *Faretta* request, his or her right to do so is unconditional, and the trial court must grant the request. A timely request, however, is one made within a reasonable time before the beginning of trial. A later request lies within the trial court's sound discretion to deny.[3] (*People v. Windham* (1977) 19 Cal.3d 121, 128; *People v. Nicholson* (1994) 24 Cal.App.4th 584, 594-595; *People v. Rivers*, *supra*, at p. 1048.) If a defendant's *Faretta* motion is untimely, it is his or her burden to justify the delay.

Here, the trial court conducted a hearing on defendant's motion to represent himself. Defendant brought his motion midtrial, a stage in which the trial court could exercise its sound discretion and deny the motion without a per se violation of defendant's constitutional right to represent himself. Defendant had a prior history of representing himself in this case and obtaining multiple continuances. He later

---

[3]In *People v. Miller* (2007) 153 Cal.App.4th 1015, 1023-1024, this court distinguished *Rivers*, holding that a defendant who brought a *Faretta* motion after trial and prior to sentencing, had not brought the motion to represent himself during trial as occurred in *Rivers*.

substituted himself out for representation by an attorney. The trial court had a legitimate basis for its concern defendant was manipulating the process of his trial.

Furthermore, defendant's comments to the trial court during the *Faretta* hearing made it clear he was going to seek a continuance of the bifurcated proceeding, even though the jury was waiting to finish its duties. The burden was on defendant to justify such a delay. Given defendant's prior history of representing himself, seeking multiple continuances, and substituting himself out for an attorney, as well as the fact defendant belatedly brought his motion during the trial, we do not find the trial court abused its discretion in denying defendant's *Faretta* motion.

## DISPOSITION

The judgment is affirmed.

_____
PEÑA, J.

WE CONCUR:


_____
LEVY, Acting P. J.


_____
DETJEN, J.

17.